THE DAVIS SEWING MACHINE COMPANY OF WATERTOWN, NEW YORK, Respondent, v. WILLIAM J. BEST, Receiver, etc., Appellant.

A party purchasing commercial paper which remains in some essential particular incomplete and imperfect, does not acquire the character of a *bona fide* holder.

Plaintiff's board of directors passed a resolution instructing its treasurer "to have signed and negotiate $10,000 of bonds" with W., who was its president, at a rate specified. It had been agreed with W., that he would negotiate the paper in the market. Plaintiff had been in the habit of issuing its notes signed by its president and secretary and guaranteed by certain of its directors, among whom was W., and had blanks, with a space left for signature of its president, in the usual place for a makers' signature with the title of his office printed under it. According to the directions in the resolution plaintiff's treasurer filled up notes for the amount specified and procured them to be signed by all the parties whose signatures were required, except that of W., as president and

guarantor and delivered them to W., to be signed and disposed of as agreed. W. signed three of them, leaving the others unsigned. He hypothecated them with the N. T. Co., as security for a loan made by it to a bank. The N. T. Co. had before that time dealt largely in plaintiff's paper and was perfectly familiar with its mode of executing such obligations. In an action against defendant, into whose hands the notes had come as receiver of the N. T. Co., to recover their possession, *held,* that as to the notes unsigned by W., defendant was not a *bona fide* holder, as they were not executed in a form authorized by plaintiff, which defect appeared on the face of the paper, and plaintiff was entitled to recover.

But *held,* that, as the notes were not enforceable as pecuniary obligations their value was only nominal and the trial court erred in directing their value to be assessed at the amount appearing to be due upon their face, instead of at a nominal sum.

(Argued January 31, 1887 ; decided March 15, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department entered upon an order made January 13, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*Delos McCurdy* for appellant. The notes lacked no formalities required by law to make a valid obligation of a corporation. (*Gottfried* v. *Miller,* 104 U. S. 527.) If there was a by-law requiring the president to sign, and the company isssued its coupon notes without such a signature, and they came into the hands of a *bona fide* holder for value, the omission could successfully be urged as a defense. (Morawitz on Priv. Corp. § 370 ; *Flint* v. *Pierce,* 99 Mass. 68 ; *Samuel* v. *Holliday,* 1 Woods, 400 ; *Mech. & Farm. Bk.* v. *Smith,* 19 Johns. 115 ; *Monteno* v. *Com. Fire Ins. Co.,* 47 N. Y. Supr. Ct. 520.) These were negotiable notes. (1 Edw. on B. and N. § 193 ; 1 Smith L. C. [603] notes to *Miller* v. *Race* ; *Grezoir* v. *Mieville,* 3 B. & C. 43 [10 E. C. L. 30] ; *Goodwin* v. *Robarts* L. R. 10 Ex. 337 ; *S. C.,* 1 App. Cas. 476 ; *Rumball* v. *Met. Bk.,* 2 Q. P. D. 195 ; *Williams* v. *Ayres,* 3 App. Cas. 133 ; *Dinsmore* v. *Duncan,* 57 N. Y. 573 ; *Mercer Co.*

v. *Hackett*, 1 Wall. 83 ; *Gelpecke* v. *City of Dubuque*, id. 206.) The incompleteness of the notes did not affect their negotiability. (*Crutchley* v. *Clarence*, 2 M. & S. 90 ; *Dinsmore* v. *Duncan*, 57 N.Y. 573 ; *White* v. *V. & M. R. R. Co.*, 21 How. U. S. 575 ; *Hubbard* v. *N. Y. C. & H. R. R. R. Co.*, 36 Barb. 286 ; *Dutchess Co. Ins. Co.* v. *Hatchfield*, 4 T. & C. 158 ; *Boyd* v. *Kennedy*, 9 Vroom. 146 ; *Russell* v. *Langstaffe*, 2 Doug. 514 ; *Androscoggin Bk.* v. *Kimball*, 10 Cush. 373 ; *Davidson* v. *Lanier*, 4 Wall. 447 ; *Mitchell* v. *Culver*, 7 Cow. 336 ; *Page* v. *Morrell*, 3 Keyes, 117 ; *Redlick* v. *Doll*, 54 N. Y. 234 ; *Ketchum* v. *Place*, 41 Barb. 465 ; *Van Duzer* v. *Howe*, 21 N. Y. 531 ; *Younge* v. *Grote*, 4 Bing. 253 ; *Bk. of Pittsburg* v. *Neal*, 22 How. 26 ; *Putnam* v. *Sullivan*, 4 Mass. 45 ; *Brainerd* v. *N. Y. C. & H. R. R. R. Co.*, 25 N. Y. 496 ; *Collins* v. *Emmett*, 1 H. Bl. 313 ; *Goodman* v. *Simonds*, 20 How. 361 ; *Montague* v. *Perkins*, 22 E. L. & Eq. 516.) The lack of the signature of Winslow, the person to whom the notes were entrusted by the company to put them upon the market, did not invalidate them. (*Ledwick* v. *McKim*, 53 N. Y. 307, 314.) The loss must be borne by the party who employed and trusted the person from whose act or default it proceeded. (*White* v. *Springfield Bk.*, 3 Sandf. 222.)

*Francis Kernan* for respondent. Where the principal confers power or authority to execute an instrument on two or more persons, all must unite in executing it. (Story on Agency, § 42 ; 2 Kent's Com. 633 ; *Green* v. *Miller*, 6 J. R. 39 ; *Copeland* v. *Merch. Ins. Co.*, 6 Pick. 198, 202, 203 ; *Salisbury* v. *Brisbane*, 61 N. Y. 617 ; *People ex rel.* v. *Walker*, 23 Barb. 304, 306 ; *People ex rel.* v. *Batchelor*, 28 id. 310, 312 ; *Fleming* v. *Burnham*, 100 N. Y. 1, 10.) The seven coupon notes or bonds, were not executed for or on behalf of the plaintiff, as they were required to be by the resolutions, which alone authorized them to be made and issued. Neither of them having been signed by Winslow, as president, or guaranteed by him individually. (*Ledwich* v. *McKim*, 53 N. Y. 307, 313, 314.) The notes were not com-

pleted instruments, as appeared on their face, and therefore
the Trust Company did not acquire a title to them as against
the plaintiff. (1 Daniels on Neg. Inst. §§ 841, 842; *Led-
wich* v. *McKim,* 53 N. Y. 307, 313.) The Trust Company
did not acquire title to the seven notes on the theory that
it had not notice or knowledge that the Security Bank had
no title to them, or right to pledge them as security for its
debt. (1 Daniels on Neg. Inst. §§ 789, 841, 842; *Ledwich* v.
*McKim,* 53 N. Y. 307, 313, 314.) The plaintiff had a right
to have the value of the notes found, that he might have
judgment for the recovery of the possession of the notes
from the defendant, or if they were not delivered to the
plaintiff, recover the value thereof. (Code of Civ. Pro. §§
1718, 1726, 1730; *Phillips* v. *Melville,* 10 Hun, 212; *Brews-
ter* v. *Sillman,* 38 N. Y. 423, 429-431; *N. Y. Guaranty
Co.* v. *Flynn,* 55 id. 653.)

RUGER, Ch. J. The facts in this case were practically undis-
puted, and upon the trial a verdict was ordered by the court
for the plaintiff for seven, of the ten notes claimed by it.

The General Term affirmed the judgment and the defend-
ant appeals from such affirmance to this court.

The questions presented by the appeal are substantially
embraced in two propositions, viz:

*First.* Whether the notes in suit were negotiable paper
entitling a *bona fide* purchaser thereof, to hold them as against
the true owner, and *second,* whether in case of a recovery by
the plaintiff, the jury was authorized to assess their value at
the amount appearing to be due upon their face, or at a nom-
inal sum only.

The plaintiff sought to recover what purported to be nine
promissory notes of the Davis Sewing Machine Company of
Watertown, for $1,000 each, with collateral guaranty and
interest coupons attached, payable November 1, 1876, and
one similar note payable February 1, 1880, each of which
was made upon a printed blank of similar form.

Three of these instruments appeared to be complete in form,

with all the blanks properly filled except the payee's name, and were duly signed by the president and treasurer of the plaintiff company. The remaining seven notes, were in the same form, except that they were not signed by the president, although a blank space with a diagonally ruled line, with the title of his office printed thereunder, was apparently left at the foot of each instrument, for such signature.

The National Trust Company was a banking institution located in the city of New York, and had been previous to this transaction, largely engaged in the business of buying, selling and negotiating similar obligations, for the plaintiff and its agents, and which had theretofore been uniformly signed by both the plaintiff's treasurer and president.

In September, 1875, a contract was made between the plaintiff and one Winslow, whereby the latter agreed, if the plaintiff would make ten bonds of $1,000 each, payable in short time, with coupons for interest attached, properly guaranteed, he would negotiate them in the market at par, for the plaintiff at a compensation of one per cent upon the amount received.

Accordingly, the following resolution was adopted on September 14, 1875, by the plaintiff's directors, and the notes in suit were issued thereunder.

" *Resolved,* that the treasurer be instructed *to have signed,* and negotiate $10,000 of bonds, due November 1, 1876, at ninety-nine cents with Mr. N. Winslow    *    *    *    *love *have such bonds signed* as may be necessary to make up the amount required."

According to the directions contained in the resolution, the treasurer filled up the notes above described, and procured them to be signed by all of the parties whose signatures were required to be affixed thereto except that of Winslow, as president and guarantor, and delivered them to Winslow to be signed and disposed of as agreed. Instead of selling the notes Winslow placed them with other notes of the plaintiff amounting to $10,000 then belonging to the Security Bank of Watertown, and hypothecated them with the National Trust Com-

pany of New York for a loan of $10,000 for the benefit of the Security Bank. Subsequently, the Security Bank repaid the Trust Company $5,000 of such loan, and required the notes belonging to it, to be returned, leaving the notes in suit in the possession of the Trust Company, as security for the unpaid balance of the loan. Upon the discovery of the conversion by Winslow of its notes, the plaintiff demanded them from the defendant, who had then been appointed receiver of the Trust Company and had possession of all its assets, and upon his refusal to surrender them brought replevin for their recovery, demanding the usual relief.

It is not seriously questioned, but that the notes were unlawfully converted by Winslow, and that the plaintiff was entitled to recover their possession, unless the Trust Company became the *bona fide* holder thereof, by virtue of their purchase from the Security Bank. Winslow could not, as against the plaintiff, have retained possession of the notes except for the purpose of executing the authority conferred upon him in accordance with its terms, neither could his transferee acquire any better title than he, except by a purchase for value without notice of the facts invalidating the title or right to their possession. (*Decker* v. *Mathews*, 12 N. Y. 313; *Comstock* v. *Hier*, 73 id. 269, 273; *Fairbanks* v. *Sargent*, 104 id. 108.)

It therefore becomes necessary to inquire whether the trust company received them charged with knowledge of their invalidity, or Winslow's want of authority to pledge them for a loan of money.

The burden of proving a purchase in good faith and for value devolved upon the defendant, after it was established that the notes had been surreptitiously put in circulation and diverted from the purpose for which they had been delivered to Winslow.

It then became incumbent upon the defendant to show that the notes had been executed in a form authorized by the plaintiff, and that the Trust Company had paid value for them upon their transfer to it.

It is claimed by the plaintiff, that the seven notes for which it has obtained judgment, were never properly executed

owing to the absence of Winslow's signature, not only as president of the company, but also as a guarantor, and that this defect was apparent upon the face of the paper and deprived the notes of the character of commercial paper.

The case shows that the plaintiff had never adopted any general by-law prescribing a method for the execution of its pecuniary obligations, and there is no claim that it ever authorized the treasurer alone to issue them, by any special resolution of its board of directors. Resolutions had frequently been adopted by the board authorizing the treasurer and president together to execute notes for specified amounts, duly guaranteed by the twelve resident directors of the plaintiff's company, and one or two resolutions were also adopted, providing for small amounts of paper, which did not prescribe any particular form of execution. But it had theretofore been the uniform practice of the plaintiff to cause all of its notes and bonds to be signed by both its president and treasurer, and guarantied by its twelve resident directors, of whom Winslow was one. Three of the notes in suit were so signed and guarantied and they belonged apparently to the same series, as the seven not so signed.

The trust company had theretofore dealt largely in the plaintiff's paper, and at the time of receiving the securities mentioned, was perfectly familiar with its mode of executing such obligations.

It was also obvious from the form of the notes that it was intended to have them signed by the president, since a blank was left for that purpose at the usual place for a maker's signature.

Not only did the seven notes in dispute show by mere inspection that they were imperfect and improperly executed, but they were never in fact authorized by the plaintiff to be issued in that form. There is nothing in the resolution of September, 1875, indicating an intention to authorize the treasurer to negotiate the notes with his signature alone, but it expressly required him not to sign them but " to have them signed." What is the natural significance of this language?

SICKLES — VOL. LX.    9

It was obviously to have them signed by the officers who had theretofore been accustomed to sign such instruments for the corporation.

Certainly no inference could be drawn that any other persons were authorized to sign and issue them, than those whose usual practice it had been to sign like instruments. Indeed, a portion of these very notes issued under the same authority, indicated the mode of execution intended, and it is an irresistible inference therefrom, either that they bore an unnecessary name, or that the other seven lacked an essential signature.

It therefore appears, not only that the plaintiff never in fact authorized the transfer of obligations, bearing the treasurer's signature alone, but there are no circumstances from which third parties had any right to infer such authority. On the contrary, universal experience justifies the inference, from the very appearance of an unfinished instrument, especially when incomplete as to the signatures for which provision seems to have been made, that the original intention which induced the maker to undertake its execution was abandoned.

Although Winslow was intrusted to sell these notes and would have been authorized to transfer them by affixing his signature as president and guarantor thereto, yet he had no authority to dispose of them without performing the implied condition imposed by the plaintiff upon such exercise of authority.

Not only the paper itself but the plaintiff's uniform custom bore evidence, of the condition, which attached to Winslows' right to transfer the paper. The performance of this condition materially affected the legal rights of the plaintiff and its guarantors, and could not be omitted without prejudice to their interests.

It is quite clear, therefore, that these seven notes were never executed as the plaintiff intended they should be, and the question arises, not whether for any reason they were enforceable against the plaintiff, but whether the transferee of such notes, by paying value therefor, became clothed with the character of a *bona fide* purchaser.

The authorities seem to be consistent and uniform to the effect that the defendant cannot be considered such a holder.

The suggestion that a party issuing negotiable paper with blank spaces therein, apparently intended to be filled up to make a complete contract, impliedly authorizes its holder to insert appropriate words in such blanks, may be dismissed as inapplicable to such a case as this.

It has sometimes been held that a party signing such paper and delivering it to a third party unfilled by implication confers such authority, but it can hardly be claimed that one drawing the form of a promissory note which is unsigned, and falls into the hands of another, thereby authorizes the holder to attach the maker's signature or to add anything which is incomplete in its execution.

The rule that a party buying commercial paper which remains in some essential particular incomplete and imperfect, does not acquire the character of a *bona fide* holder, rests upon sound reasons and is well established in commercial law. No stronger evidence could be afforded that such paper had been prematurely put in circulation contrary to the will and intention of its maker, than the fact that it had not been fully and completely prepared, to perform the office for which it was designed. It is apparent that such paper must have been taken from the possession of its maker before an intention to part with it had been fully formed, and that he still designed to add some provision or formality to give it vitality and effect. It was said by the late Judge FOLGER in *Ledwich* v. *McKim* (53 N. Y. 307, 313), that "a negotiable instrument must be a complete and perfect instrument when it is issued, or there must be authority reposed in some one, afterwards to supply anything needed to make it perfect." The rule is also laid down in Daniels on Negotiable Instruments (§§ 841, 842).

We cannot, therefore, hold that the Trust Company became the *bona fide* holder of the seven notes. The reasons which lead us to this conclusion would also seem to require us to hold that the trial judge erred in directing the jury to assess the value of the notes at the amount apparently due thereon.

If the notes were not enforceable as pecuniary obligations of the plaintiff and its guarantors, it necessarily follows that they could not have had any other value, than that which pertained to the material upon which they were written. It is, therefore, evident that the court erred in directing their value to be assessed upon the principles stated.

That this was a material error is evident from the fact that the jury did not find damages for the detention of the notes and, therefore, the assessment of the value controls the question of costs in the case.

We see no ground upon which such notes can be appraised at anything but a nominal value, and we think it was error in the trial court to refuse to so direct the jury.

The judgment should, therefore, be reversed, and a new trial ordered with costs to abide the event.

All concur.

Judgment reversed.