(Lucas County, Ohio, Common Pleas.)

M. D. MERRICK Receiver, v. THE MERCHANTS NATIONAL BANK OF TOLEDO, OHIO.

---

Where after the appointment of a receiver for a partnership firm, a draft in payment of money due the firm, was drawn by a government engineer on the assistant treasurer of the United States, and by him mailed to the firm, the engineer having been advised by such receiver of his appointment, which draft falling into the hands of a member of the firm was by him negotiated at a bank, for full value upon his endorsing it in his own name and in the name of his firm, the receiver is entitled to such draft, and the discounting bank has no interest in or title thereto, although at the time it discounted the draft it had no knowledge that a receiver of such firm had been appointed.

[COPYRIGHT, 1901, BY CARL G. JAHN.]

By the appointment of a receiver of a partnership the possession, control and disposition of the firm property are taken away from the partners and given to the receiver, and neither partner can thereafter interfere with the receiver in the settlement of the partnership affairs.

A receiver is the ministerial officer of the court which appoints him and his possession is the possession of the court.

Any interference with a receiver or with the property under his protection amounts to contempt of court.

The object of having a receiver appointed of a partnership is to place the partnership assets under the protection of the court and to prevent everybody except the officer of the court from in anyway intermeddling with them.

A receiver of a partnership takes the whole equitable title to the partnership property of all parties to the suit in which he is appointed.

When a draft was negotiated by one having no authority to do so, the burden is upon the party discounting it to show such a state of facts as under the law will confer upon it a good title.

A bank discounting a draft payable to a partnership with which it has never had any dealings, at the instance of one of the partners, is bound to ascertain who and what the company is, and what are the relations to the company of such partners.

One partner cannot after dissolution of the partnership, without the consent of the other partner, endorse a note belonging to a firm, so as to pass the legal title to the note to the assignee.

---

PUGSLEY, J.

This case was submitted to the court upon an agreed statement of facts and involves an important and somewhat novel question.

The action is one in replevin and was brought to recover the possession of a certain check or draft drawn on February 9, 1899, by one T. W. Symons, a United States lighthouse engineer, for the sum of $1,521.41. It was drawn upon the assistant treasurer of the United States at New York and was payable to the order of the East Side Construction Company.

A summary of the agreed statement of facts is as follows: On and prior to January 21, 1897, Charles R. Leggett and James N. Leggett were partners, doing business under the name of the East Side Construction Company. On said January 21, said partnership entered into a contract with the government of the United States, through the engineer in charge of the tenth light house district, for the construction

of foundations for certain beacons in Maumee bay. The work was begun and thereafter about April 1, 1898, was completed. On said April 1, there being some differences between the partners, said Charlés R. Leggett began an action in this court for the purpose of winding up the partnership and on April 4, plaintiff was duly appointed receiver of the firm. He qualified and has ever since been acting as such receiver. On April 5, the day following his appointment, the receiver mailed to the engineer in charge of the tenth light house district a certified copy of the order appointing him, and the same was received by said engineer. At the time of the appointment of the receiver, the only asset of said partnership consisted of its claim against the government under said contract of January 21, 1897, and as stated in the agreed statement of facts, the receiver used due diligence in attempting to procure a settlement and payment of said claim. On February 9, 1899, T. W. Symons, engineer in charge of the tenth light house district, drew the draft or check heretofore described in payment of the amount due for said work from the government. And on the same day the engineer sent the draft by mail addressed to the East Side Construction Company, Toledo, Ohio, care of James N. Leggett. On the next day, February 10, James N. Leggett received the draft and delivered it to the defendant, The Merchants National Bank. The bank paid Leggett the full face value of the draft in money, he having first written on the back of the draft these words: "James N. Leggett, The East Side Construction Company." The defendant at the time of receiving the draft had no actual knowledge or notice of the commencement of said action by Charles R. Leggett against James N. Leggett or of the appointment of the receiver, or of any order entered in that action. The defendant forwarded the draft for collection to the assistant treasurer of the United States, the drawee, who refused to pav it in the form in which it was presented, and caused it to be returned to the defendant for further indorsement; and upon February 18, 1899, James N. Leggett wrote upon the back of the draft the following additional words: "James N. Leggett, proprietor, sole owner." The draft was again presented to the drawee, but he refused to pay it until the question as-to who is legally entitled to payment has been fully and properly determined. The plaintiff first learned

of the issuing and transfer of the draft on March 2, 1899. Said draft is now in the possession of defendant and prior to the commencement of this action the plaintiff demanded of the defendant that it deliver to him the draft, with which demand the defendant refused to comply. The plaintiff has received no part of the money paid by the defendant to James N. Leggett for the draft.

The question to be decided is whether the plaintiff as the receiver of the East Side Construction Company has the right to the possession of this draft as against the defendant, which purchased it during the existence of the receivership from James N. Leggett for a valuable consideration and without knowledge that the partnership was in the hands of a receiver.

Counsel have submitted able and exhaustive briefs in which numerous legal propositions are discussed and a large number of authorities cited. There can be no reasonable grounds for dispute as to what are the powers of a receiver appointed by the court to take charge of partnership property. To some extent the powers of a receiver are regulated in this state by statute.

Section 5590, Revised Statutes, is as follows:

"The receiver shall have power, under the control of the court, to bring and defend actions in his own name as receiver to take and keep possession of the property, to receive rents, collect, compound for, and compromise demands, make transfers, and generally to do such acts respecting the property as the court may authorize."

It thus appears, that under the statute, the receiver of a partnership has the power, under the supervision and control of the court, to take and keep possession and make transfers of the firm property, collect the firm debts, and bring actions in his own name as receiver respecting the property. The order of appointment in this case directs the receiver to take charge of and conclude the partnership business and empowers him to settle, receive and receipt for all sums due to said partnership, and report to the court his receipts, and hold the same subject to the further order of the court.

The Supreme Court in Bank v. McLeod, 38 Ohio St., 174, expressed its views as to the powers of a receiver in a case where the statute of this state was not involved. In that case the

right to the possession of certain personal property situate in this state, which was covered by mortgages given by a railway company in another state, was the matter in controversy between the receiver of such company appointed by the court of such other state at the instance of the mortgagees and a creditor of said company who caused said property to be seized in attachment in this state. It was held that the receiver might by an action brought in this state in his own name assert his right to the possession of said property; and judgment in favor of the receiver was affirmed. I will read from the opinion of the court beginning on page 181:

"Let it be assumed as settled by all the authorities that the order of the Kentucky court sitting in chancery, did not operate to confer or divest any *title* to property outside of that state.

That is probably also true as to the title of property within that state. The receiver, when appointed by the court of chancery, did not acquire the title to the property, but only the right under orders of the court to possess and operate the same, as the trustees under the mortgage might have done, or as the court might direct.

"Stripped of all collateral matters, the question is, has the receiver in such case the legal capacity to possess himself of the property embraced in these mortgages. The general principle is, that the possession of the receiver is that of all parties to the suit according to their titles; as between the owner and the incumbrancers, it is for some purposes the possession of the incumbrancers, who have obtained or extended the receiver; as between the owner, whose possession has been displaced, and a third party, it is th possession of the former: High on Receivers, Section 134, note 1. Thus in Horlock v. Smith, 2 Law Journal, N. S., 157, where a receiver was appointed of property mortgaged to A. and continued to hold over after his discharge, it was held, that the possession of the receiver after such discharge was the possession of A.

"The general proposition is well established that the receiver is the officer or agent of the court appointing him for the benefit of whoever may be ultimately determined to be entitled to the property. In the case at bar, the fact was established, that the right of property was in the receiver, for the benefit of the incumbrancers, on whose motion he was appointed,

and therefore, as between them and the owner, or the unsecured creditors, the possession is that of the incumbrancers. Thus it was held in Angel v. Smith, 9 Vesey, 337, that when the rights of the parties are ultimately determined, the possession of the receiver for the whole period, by relation, dates back to the time of the appointment, though, pending such determination, it be deemed the possession of the court for all parties interested.

"Again, the possession of the receiver and his right to possession, are exclusive. No one, not even the trustees under these mortgages, could interfere with this right. Having procured his appointment, and placed the property in the custody of the court, they would be estopped from asserting in person the right to enter upon and use the property, reserved to them in the conditions of their mortgages. Without authority of the court, no one has a right, by execution or otherwise to interfere with the receiver's possession."

The following general propositions are sustained by the authorities: By the appointment of the receiver, the possession and control and disposition of the firm property are taken away from the partners and given to the receiver. Neither partner can thereafter interfere with the receiver in the settlement of the partnership affairs. A receiver is the ministerial officer of the court which appoints him, and his possession is the possession of the court. The property being regarded as in the custody of the law, any interference with the receiver, or with the property under his protection, amounts to a contempt of court. The object of having a receiver appointed is to place the partnership assets under the protection of the court and to prevent everybody, except the officer of the court, from in any way intermeddling with them. The receiver takes the whole equitable title to the partnership property of all parties to the suit in which he is appointed.

Beach on Receivers (Alderson's Ed.), Sections 4, 6, 208, 209, 217, 235, 585, 586; Bates on Partnership, Vol. 2, Section 993; Payne v. Baxter, 2 Tenn., Ch. 577; Kirkpatrick v. McElroy, 7 Atl. Rep., 647 [41 N. J. Eq., 539]; Maynard v. Bond, 67 Mo., 315; Norman v. McNutt, 30 Wis., 277; Pope v. Ames, 25 Pac. Rep., 393 [20 Ore., 199]; Lindley on Partnership, Vol. 2, 1005, 1014; Connecticut River Bank Co. v. Rockbridge Co., 73 Fed. Rep., 709; Rand v. Wright, 39 N. E. Rep., 447 [141 Ind., 226]; Ryan v. Kingsbery, 14 S. E. Rep., 596

[88 Ga., 361]; Tillinghast v. Champlin, 4 R. I., 173 [67 Am. Dec., 510].

In view of the principles and rules which are announced by the authorities, there is no doubt that the plaintiff in this case, on his appointment as receiver of the partnership, was authorized to collect and receive payment of debts owing to the firm, and if necessary, to bring actions thereon in his own name. This authority was vested in him by his appointment without any further proceedings upon his part. And it was vested in him exclusively. The power of each partner to possess and control firm assets ceased upon the appointment of the receiver. So when the draft in question in this case was received by James N. Leggett, he had no right or authority to negotiate it, or dispose of it for his private purpose, or for any purpose. It was his duty to deliver it to the receiver, who alone was authorized to collect it. It was made payable to the order of the East Side Construction Company, of which the receiver at that time was the sole representative. There can be no question as between the receiver and Leggett, the receiver was entitled to the possession of the draft; and had Leggett refused to surrender it upon demand of the receiver, he would have been guilty of a contempt of court. At the time Leggett negotiated the draft, he had no right to retain possession and no authority to negotiate it.

The important question is, whether, notwithstanding his want of authority to dispose of this draft, the defendant acquired a good title to it by paying him full value; it having at the time no knowledge that the payee, The East Side Construction Company, was in the hands of a receiver.

It appearing that the draft was negotiated by one having no authority to do so, the burden is upon the defendant to show such a state of facts as under the law will confer upon it a good title. The facts relied upon are, that James N. Leggett, having possession of the draft, indorsed upon it the words "James N. Leggett. The East Side Construction Company," and delivered it to the defendant; and that the defendant paid him full value and had no knowledge that the East Side Construction Company was in the hands of a receiver. These are substantially the facts that are relied upon. It is not claimed that the defendant ever had any dealings with the East Side Construction Company. It is not claimed even

that the defendant knew or supposed at the time it purchased the draft, or previously, that the East Side Construction Company was a partnership, of which James N. Leggett was a member. It may reasonably be inferred from the manner in which the draft was indorsed, both before and after the transfer, that the defendant was in some manner led to believe that the draft belonged to James N. Leggett individually, then doing business under the name of the East Side Construction Company. The draft was payable to the order of the East Side Construction Company and was indorsed and transferred by a person, who in fact had no authority to represent the company and was never known by the defendant as having such authority.

If a draft payable to the order of A is indorsed by B as A's agent, and is cashed by a bank and B had no authority from A to negotiate the draft, or if B indorsed A's name without authority, it will not be contended that the bank acquired title to the draft.

Wherein does this case differ from the one supposed? A forged indorsement or an unauthorized indorsement, is no indorsement. Indiana National Bank v. Hallsclaw, 98 Ind., 35. Counsel for defendant in his brief, possibly anticipating the objection that the indorsement was of no force or validity, makes this statement: "The paper in controversy is a mere chose in action, and title thereto may be transferred without indorsement; the indorsement is merely evidence of the transfer; and the rights of the defendant would be exactly the same if the paper had been transferred without indorsement. If the government should decline to pay it, for the want of an indorsement, still the bank could bring an action upon the instrument, and would be entitled to recover, upon proof that it purchased the same."

If the purchase was made of the owner, or his authorized agent, the above statement is correct; but if the transferrer of the instrument had no title and was not authorized by the owner to sell, then the bank acquired no title.

I will read from Vol. I, Daniel on Negotiable Instruments, Section 741: "We have already seen that where a bill or note payable 'to order' is transferred without indorsement, the transferee does not acquire the legal, but only the equitable title. The holder under such a transfer must aver and prove the assignment, for the mere possession of the instrument unin-

·dorsed is not evidence of ownership, and its ·exhibition in the suit is not sufficient ground of recovery. And he can only stand in the shoes ·of his assignor, and recover subject to such defenses as were available to him, although he took it in good faith for value. Therefore, if a party transfers a note payable to the order of another, but unindorsed by him to whose order it is payable, and it turns out that the transferrer had no title, the transferee could not recover, there being no equitable right to which he can claim succession."

Certainly James N. Leggett had no title to this draft and was not entitled to payment as against the receiver. And under the admission that Leggett's indorsement added nothing to the defendant's right. the defendant acquired by its purchase no better right than Leggett had, although it paid full value for the draft and had no knowledge of Leggett's want of authority.

It can not be said, in this case, that the plaintiff as receiver, was guilty of any negligence, or that he carelessly omitted to do something that would have prevented defendant from purchasing the draft. According to the agreed statement of facts, immediately upon his appointment as receiver, he mailed to the enginer in charge of the tenth light house district, a certified copy of the order appointing him together with a letter calling his attention to the purport of said order; which certified copy and letter were received by said engineer. And it is admitted, that the receiver exercised due diligence in attempting to procure a settlement and payment of the claim, for which the draft was issued; and that he did not learn of the issuing, delivery or transfer of the draft, until the second of March, 1899, some three weeks after the draft was negotiated to the defendant. Now what more could the receiver have done? The only thing suggested is that he might have taken from James N. Leggett an assignment of his interest in the claim. Such an assignment was unnecessary, as the exclusive right to collect the claim was vested in the receiver upon his appointment. The assignment would have added nothing to the receiver's right and certainly would have had no effect to prevent the defendant from purchasing the draft. The receiver. had no reason to anticipate that James N. Leggett would get possession of the draft and attempt to negotiate it, and by taking control of the claim and using due diligence to

collect it he took all the possession of the claim that was possible.

On the other hand, there is good reason for saying that the bank was negligent. The East Side Construction Company being the payee of the draft, and the bank never having had any dealings with the East Side Construction Company, ordinary prudence required the bank to ascertain who or what that company was, and what were the relations to the company of James N. Leggett. The bank could safely purchase only from the payee, or its authorized agent; and if it had taken ordinary precautions, there is little doubt that it would have ascertained all the facts. I cite Graves v. Bank, 17 N. Y., 205; Dodge v. Bank, 30 Ohio St., 1, Armstrong v. Bank, 46 Ohio St., 512.

It is contended by counsel for defendant, that one having no knowledge that a receiver of a partnership has been appointed may safely purchase firm property from one of the partners, because the legal title to the property is still in the partnership, notwithstanding the appointment of a receiver. Assuming that the legal title is to be regarded as still remaining in the partnership, the authority of the partners to control and dispose of the firm property during the receivership is entirely taken away. I know of no principle upon which a stranger is entitled to claim that such power exists. This is not the case of a tangible asset in the possession of a partner, nor is it a case where the purchaser having had previous dealings with the firm and no knowledge of the receivership, has reason to believe that the firm still exists and that the partner has authority to act for it. What would be the rule in such cases it is not necessary to inquire. Here, the fact is, Leggett had no power or authority to sell or transfer the draft. He was not the payee of the draft, and there was nothing in the conduct of the East Side Coustruction Company or the receiver known to the bank which led the bank to believe that Leggett had such authority. The bank assumed without knowing that James N. Leggett was the East Side Construction Company. If, under the facts of this case, Leggett could transfer to the bank good title to the draft, then why could not any person never connected with the firm, who found the draft or stole it, do the same? I do not think that the authorities cited to the effect that the legal title to the firm assets still remains in the partnership help the defendant's contention. The

claim which the East Side Construction Company had against the government was an intangible asset of the firm and its only asset. The receiver was the only person authorized to collect it and was doing all in his power to collect it and when the draft was issued in payment of the claim and made payable to the order of the East Side Construction Company, the receiver had the exclusive right to its possession and to indorse and collect it.

There is another matter which was extensively discussed by counsel in their briefs, and upon which I will say a few words although I do not think that it has much, if any, bearing upon the question to be decided, and that is, as to the power of a partner after the dissolution of the firm, to indorse negotiable paper belonging to the firm. In the first place, there is a dispute as to whether it sufficiently appears that the partnership in this case was dissolved. It is alleged in the petition filed in the case of Leggett v. Leggett, which is made a part of the agreed statement of facts, that "the plaintiff and defendant do not longer desire to maintain said partnership and have dissolved the same." No answer was filed. Defendant was present in court, both in person and by attorney, and in the order appointing the receiver the allegations of the petition are found to be true. In addition to this, a receiver was appointed. It is held that the effect of the appointment of a receiver of partnership property is to terminate the partnership contract by judicial action. Beach on Receivers, Section 557. All this was ten months before the defendant purchased the draft. On the assumption that the partnership was dissolved counsel differ as to the law. All authorities agree that the dissolution of the partnership revokes the authority of one partner to act for the other. Neither can make any contract that shall be binding on the other. After dissolution one partner can not without authority from the other indorse a note belonging to the firm even in payment of firm debts. Palmer v. Dodge, 4 Ohio St., 21; Vol. 2, Bates on Part., Section 690 and numerous cases there cited. The author just mentioned suggests that the endorsement of a partner after dissolution merely to pass title, as without recourse, ought to be permitted, as it involves no liability, except the implied one of genuineness. and one case is cited in support of that suggestion. Chappell v. Allen, 38 Mo., 213. But it is held in the following cases that one partner can not after dissolution, without the consent of the other partner, endorse a note belonging to the

firm, so as to pass the legal title to the note to the assignee. Dickerson v. Wheeler, 1 Humphrey (Tenn. Rep.), 51; Mygatt v. McClure, 3 Head. (Ten.), 495; Morse v. Bellows, 7 N. H., 568; Fellows v. Wyman, 33 N. H., 351; Sanford v. Nickels, 4 John: 224.

The rule of these cases furnishes an additional reason, if one is needed, why the endorsement or transfer of Leggett did not give the bank the title to the draft. In addition to this, the draft never belonged to the partnership. Not being issued until after the receiver was appointed, although made payable to the order of the partnership, the receiver was alone entitled to its possession and could alone endorse and transfer it.

Judgment is therefore rendered in favor of the plaintiff for the possession of the draft, and under the stipulation between the parties, if the draft is not delivered, for the amount of the draft as damages.

*O. W. Nelson,* for plaintiff.

Swayne, Hayes & Tyler, for defendant.

———————

Orin W. Nelson, for plaintiff.

Upon the appointment of a receiver to wind up the affairs of a partnership, the assets of the firm are at once placed in the custody of the court.

Sec. 5590 R. S., Bank v. McLeod, 38 O. S., 174; Steel v. Sturgis, 5 Abb. Prac., 442; Manyard v. Bond, 67 Mo., 315; Hazelburg v. Bronaugh, 78 Ky., 432; Payne v. Baxter, 2 Tenn. Ch., 517.

The receiver's right of possession is absolute.

Bank v. McLeod, 38 O. S., 174; Pope v. Ames, 20 Ore., 199; Manyard v. Bond, 67 Mo., 315; Ryne v. Kinsbury, 88 Ga. 361; Beverly v. Brooke, 4 Grat., 187.

Where it is shown that the original holder committed a fraud in the transfer of a negotiable instrument, the burden of proof is shifted upon the party claiming under such transfer.

McKesson v. Staberry, 3 O. S., 156; Davis v. Best, 105 N. Y., 59.

It is the duty of a person dealing with a partnership the first time, to inquire and learn who compose the firm.

Bates on Partnership, section 609; Cook v. Slate Co., 36 O .S., 135.

After dissolution, the powers of a partner are limited to 'Acts of administration, which are necessary for winding up the concern.' He has no power to use the firm name in execution, indorsing, or transferring commercial paper.

Story on Partnership, Sec. 322; Abel v. Sutton, 3 Esp., 108; Bredon v. Savings Inst. 28 Mo., 181; Glasscock v. Smith, 25 Ala., 479; Whiteworth v. Ballard, 56 Ind., 279; Gardner v. Conn., 34 O. S., 187; Bank v. Green, 40 O. S., 431; Woodworth v. Downer, 13 Vt., 522; Fisher v. Tucker, 1 McCord Ch., 169; Sanford v. Michaels, 4 Johns, 224; Fellows v. Wyman, 33 N. H., 351; Humphreys v. Chasten, 5 Ga., 166; Meyer & Co. v. Atkins, 29 La., 586; Palmer v. Dodge, 4 O. S., 21; Bryant v. Lord, 19 Minn., 396; Conrad v. Buck, 21 W. Va., 369; Dickerson v. Wheeler, 1 Humph., 51; Parker v. Macomber, 18 Pick., 509.

Such indorsement does not convey the legal title.

Abel v. Sutton, 3 Esp., 108; Parker v. Macomber, 18 Pick., 505; Fellows v. Wyman, 33 N. H., 351; Sanford v. Michaels, 4 Johns, 224; Glasscock v. Smith, 25 Ala., 474; Bredow v. Savings Inst., 28 Mo., 161.

Before an indorsee can acquire title to a negotiable instrument, payable to order, it must be endorsed by the real payee. This rule is absolute, no amount of care or good faith will protect him.

McKesson v. Stanbery, 3 O. S., 156; Shaffer v. McKee, 19 O. S., 526; Dodge v. Bank, 20 O. S., 234; Dodge v. Bank 30 O. S., 1; Armstrong v. Bank, 46 O. S., 512; Hull v. Conover, 35 Ind., 372; Bank v. Hallsclaw, 98 Ind., 85; Merrell v. Springer, 123 Ind., 485; Gibson v. Miller, 29 Mich., 355; Davis S. M. Co. v. Best., 105 N. Y., 59; Vagliano v. Bank, 23 O. S., 343.

(This judgment was affirmed by the circuit court March 9, 1901, without report.)