MINERS' & MERCHANTS' BANK OF LONACONING v. ARDSLEY
HALL CO.

(Supreme Court, Appellate Division, First Department. May 18, 1906.)

DEPOSITIONS—ADMISSIBILITY IN EVIDENCE—PRESENCE OF WITNESS.

Under Code Civ. Proc. §§ 870, 871, providing for the taking of deposi-
tions, section 872, subd. 7, providing that if the party sought to be exam-
ined is a corporation, the affidavit shall state the name of the officer or
director thereof, and the order to be made in respect thereto shall direct
the examination of such person, and section 882, providing that such a dep-
osition, except that of a party taken at the instance of an adverse
party, shall not be read in evidence, until it has been proved that the wit-
ness is unable to attend, the deposition of an officer of a corporation in
an action against the corporation, taken at the instance of the party ad-
verse to the corporation, is not admissible in evidence where the de-
ponent was present and examined at the trial.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Depositions, §§
258–260.]

O'Brien, P. J., dissenting.

Appeal from Trial Term.

Action by the Miners' & Merchants' Bank of Lonaconing against the
Ardsley Hall Company. From a judgment in favor of plaintiff, and
from an order denying a new trial, defendant appeals. Reversed, and
new trial granted.

Argued before O'BRIEN, P. J., and PATTERSON, McLAUGH-
LIN, LAUGHLIN, and HOUGHTON, JJ.

John A. Stephens, for appellant.
J. H. Caldwell (Robert R. Reed, on the brief), for respondent.

LAUGHLIN, J. The action is upon two promissory notes purport-
ing to have been made by the defendant. Each note is for $2,500, bears
date the 31st day of March, 1903, was written, with the exception of
the day of the month in the date and the words "with interest," by
Thomas Cochran, Jr., who was the treasurer of the company, and was
signed by him, "Ardsley Hall Co., by Thomas Cochran, Jr., Treas.,"
was made payable to his order as treasurer four months after date, and
was indorsed by him as treasurer. The defendant denied the making of
the notes, and alleged as defenses that they were not signed or executed
according to the by-laws or authorized, and that it never received any
of the proceeds thereof.

The defendant corporation owned and conducted an apartment house
in the city of New York, and in the month of March, 1903, it be-
came necessary for it to borrow money to pay certain pressing obliga-
tions. The notes were made by the treasurer, and delivered to the
president, Frank J. Kohler, to be negotiated for the purpose of raising
the money required. Kohler was also secretary and treasurer of the
City Trust & Banking Company of Baltimore, Md., which for brevity
will be referred to as the "Trust Company," and spent most of his time
in that city. The defendant had an account with the Trust Company,
and the interest coupons on its second mortgage bonds were payable
there The plaintiff, as its name implies, conducted a banking business
at Lonaconing, Md. The plaintiff frequently purchased negotiable pa-

per of the Trust Company, with which it had an account, and which was its correspondent, and had been for several years. In these business transactions it had correspondence with Kohler almost daily. It appears that this letter was signed by Kohler individually, but that he was accustomed to sign sometimes individually and sometimes in his official capacity. On the 20th day of April, 1903, which was before maturity, the plaintiff received the notes, inclosed with a letter written by Kohler from Baltimore on the stationery of the Trust Company, which letter related to other business between the plaintiff and the Trust Company, and requested that it discount the notes; stating in the body of the letter that he (Kohler) was going to charge the notes to plaintiff's account, and that if it was not all right he would take them up when he returned from New York, but in a sentence at the end of the letter he said he would not charge them to plaintiff's account, and requested it to send draft to him for them if it was all right. The plaintiff immediately discounted the notes, and forwarded a draft on the Trust Company, addressed to Kohler at the office of the Trust Company, but payable to him individually. The draft was paid the next day. Kohler received the money, but it does not appear what he did with it. The plaintiff's cashier says that ordinarily drafts were drawn payable to Kohler in his official capacity with the Trust Company, but that this one was drawn payable to him individually, because he inferred from the letter that Kohler desired it so drawn. The plaintiff knew that Kohler was president of the defendant, but counsel for defendant showed by the cross-examination of the cashier of the plaintiff, who discounted the notes, over an objection interposed by the plaintiff, that he did so in the belief that the notes had been negotiated to the Trust Company. After Kohler had possession of the notes, and eight days after they were discounted by the plaintiff, the account of the defendant with the Trust Company was credited with $4,135. The treasurer of the defendant testified that the credit came from the deposit of a certificate of deposit issued by the Trust Company to Kohler, and indorsed by him to defendant. It was shown that, shortly prior to the receipt of this certificate of deposit by the defendant from Kohler, it had advanced for him the sum of $2,000, and the court excluded evidence that might have shown that he was further indebted to it, and defendant excepted. If the judgment can be sustained, therefore, it must be upon the theory that it is immaterial whether or not the defendant received any of the proceeds of the discount of the notes.

The Trust Company suspended business about the 6th of June, 1903. Kohler's accounts with it were involved. He disappeared about the time of the failure of the Trust Company, and his testimony was not obtained on the trial of the action. The treasurer of the defendant testified, without objection, that he was informed by Kohler on or about April 12, 1903, that the notes had not then been negotiated, and a few days prior to the time that Kohler disappeared he received back from him a $10,000 note which had been delivered to Kohler at the same time and for the same purpose as the two notes in question, but which had not been negotiated, and that Kohler then informed him, in reply to a demand for the return of the two notes in question, that he had

"given it to the Miners' & Merchants' Bank." The foregoing seems to be the only express evidence on the question as to whether the notes had been first discounted by the Trust Company. Counsel for the appellant states in his points that they were first negotiated with the Trust Company, and by it transferred to the plaintiff, and counsel for respondent seems to deem it immaterial. It is therefore not necessary to consider the sufficiency or the effect of the evidence on that point.

The defendant showed that it never received any of the proceeds of the discount of the notes, and that the issuance thereof was not authorized by the board of directors. The appellant in its first point contends that it was error to receive the notes in evidence without proof that their execution by the treasurer was authorized. In its second point, however, it concedes that the proper construction of the by-laws of the company is that the treasurer is the proper officer to sign notes, but contends that the by-laws require that notes shall be countersigned by the president, which was not done. The by-laws, so far as material, are as follows:

"Sec. 2. The president shall preside at all meetings of the board of directors, and shall act as temporary chairman at, and call all meetings of the stockholders; he shall sign certificates of stock, sign and execute all contracts in the name of the company, when authorized so to do by the board of directors; countersign all checks drawn by the treasurer; appoint and discharge agents and employés, subject to the approval of the board of directors, and he shall have the general management of the affairs of the corporation, and perform all the duties incidental to his office."

"Sec. 4. The treasurer shall have the care and custody of all the funds and securities of the corporation and deposit the same in such bank or banks as the directors may elect; he shall sign all checks, drafts, notes and orders for the payment of money which shall be countersigned by the president."

While it does not appear that Cochran, as treasurer, had ever made notes for the purpose of negotiating a loan without the countersignature of the president or vice president and authority from the board of directors, it does not appear that he had made notes not authorized by resolution of the board of directors, seven or eight in number, for the payment of the company's bills. Sometimes the payment of interest on coupons was authorized by resolution of the board of directors, and sometimes payment was made without such authorization. A sale of second mortgage bonds to Kohler was made without authority of the board of directors, and it also appeared that Cochran, as treasurer, was in the habit of indorsing defendant's checks and drafts for deposit in the Trust Company without any formal authority. The notes were entered on the books of the defendant, and its vice president had notice thereof, but it does not appear how soon after their execution.

At the close of the evidence both sides moved for a direction of a verdict. This submitted the question of fact to the court for determination. The verdict having been directed in favor of the plaintiff, the defendant excepted. This exception entitles the defendant to a reversal if the evidence was insufficient as a matter of law to sustain any essential finding, and the motion for a new trial entitles it to a reversal if any material finding is against the weight of the evidence.

The evidence was clearly insufficient to justify or sustain a finding that the defendant held its treasurer out as authorized to make promis-

sory notes, or its president to negotiate notes so made, or that it ratified the acts of the treasurer in issuing, or of the president in negotiating, this note. There was no course of dealing or holding out these officers as authorized by which the defendant could be held liable on the theory of implied authority or on the theory of estoppel. It is doubtful whether the by-laws conferred authority on the treasurer to issue promissory notes of the company, even when countersigned by the president with action of the board of directors; but that point need not be decided, for it is quite clear that, in any event, it only authorized the issuance of its promissory notes when signed by the treasurer and countersigned by the president. There seems to be a distinction between actions on promissory notes of business and religious corporations with respect to what evidence is sufficient to establish a prima facie case that the paper was issued by authority of the defendant. People's Bank v. St. Anthony's R. C. Church, 109 N. Y. 512, 17 N. E. 408; Karsch v. Pottier & Stymus Mfg. Co., 82 App. Div. 230, 81 N. Y. Supp. 782. The weight of authority, however, in this jurisdiction is to the effect that a recovery cannot be had against either a religious or a business corporation on commercial paper unless the evidence, taken as a whole, shows or warrants a finding, not only that the paper was issued by officers of the corporation, but that its issuance was authorized by the by-laws, or by a resolution of the board of directors, or by a course of dealing by which the corporation held them out as authorized to issue it, and would be deemed estopped from questioning their authority or of ratification by the acceptance and retention of some benefit or advantage from the unauthorized act or otherwise. Dabney v. Stevens, 2 Sweeney, 415–425, affirmed on this point, 46 N. Y. 681; People's Bank v. St. Anthony's R. C. Church, supra; Bangs v. Nat. Macaroni Co., 15 App. Div. 522, 44 N. Y. Supp. 546; Nat. Bank of Newport v. Snyder Mfg. Co., 107 App. Div. 95, 94 N. Y. Supp. 982; National Bank v. Navassa Phosphate Co., 56 Hun, 136, 8 N. Y. Supp. 929; McCullough v. Moss, 5 Denio, 567; Green et al. v. Iroquois Hotel & Apartment Co. (Sup.) 84 N. Y. Supp. 591; Davis Sewing Machine Co. v. Best, 105 N. Y. 59, 11 N. E. 146. Proof of such authority in the case of a corporation is what is shown in the case of an individual or copartnership by proof of the genuineness of the signature. The rule is deemed essential to protect corporations against the unauthorized and fraudulent acts of its officers, and that those taking negotiable paper, purporting to be the paper of a corporation, must ascertain at their peril, if they take it relying upon the credit of the maker, whether it was authorized. De Bost v. Albert Palmer Mfg. Co., 35 Hun, 386; Cheever v. Pittsburgh, etc., R. R. Co., 150 N. Y. 59–65, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646. Of course, if the issuance of negotiable paper is authorized by a corporation, and the obligation of the corporation is executed in the form and manner required by the authority conferring the power, the corporation will be liable, even though its officer or agent should divert it, and appropriate the proceeds of the discount to his own use (Ring v. L. I. R. E. Exch., 93 App. Div. 442, 87 N. Y. Supp. 682); but this is for the protection of those dealing in such securities who could have no knowledge of the dishonest intentions of the officer

or agent, and could not protect themselves against the same while the corporation may be requiring indemnity. There being no sufficient evidence of holding out, estoppel, or ratification, no recovery can be had unless it be shown that it was the paper of the defendant. It never became the authorized paper of the defendant, because, not having been countersigned by the defendant, as required by the by-laws, it never became completely executed. Sewing Machine Co. v. Best, 105 N. Y. 59, 11 N. E. 146; De Bost v. Albert Palmer Co., supra. The case of Martin v. Niagara Falls Paper Co., 44 Hun, 130, affirmed 122 N. Y. 165, 25 N. E. 303, is distinguished on the ground of the absence here of the holding out or ratification which were the controlling features in that case. The case of Patterson v. Robinson et al., 116 N. Y. 193, 22 N. E. 372, does not seem in harmony with some of the prior and subsequent decisions already cited on the question of burden of proof; but it is not inconsistent with the views here expressed that a corporation cannot be held liable upon a contract unless it either authorized its execution, ratified it, or has done some act by which it should be deemed estopped.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

McLAUGHLIN, J. (concurring). I vote for a reversal of this judgment upon the ground that the court erred in permitting the deposition of Thomas Cochran, Jr., to be read. Section 870 of the Code of Civil Procedure provides for taking the deposition of a party to an action and section 871 of a person not a party. Subdivision 7 of section 872 provides that, if the party sought to be examined is a corporation, the affidavit shall state the name of the officer or director thereof, and the order to be made in respect thereto shall direct the examination of such person, etc.

Section 882 provides that:

"Such a deposition, except that of a party taken at the instance of an adverse party or the deposition taken in pursuance of a stipulation as prescribed in this article, shall not be so read in evidence until it has been satisfactorily proved that the witness is dead or is unable personally to attend by reason of his insanity, sickness or other infirmity, or that he is confined in a prison or jail and has been or is absent from the state, so that his attendance could not by reasonable diligence be compelled by subpœna."

Cochran was present and examined as a witness at the trial, and when the plaintiff proposed to read his deposition objection was taken upon that ground. The objection was overruled, and the deposition received upon the ground that he was a party to the action. The ruling was erroneous. The deposition should have been excluded. Except for this error, I should vote to affirm the judgment.

PATTERSON, J., concurs.

HOUGHTON, J. (concurring). I concur in a reversal of this judgment, but on the ground only that error was committed in permitting the plaintiff to read the deposition taken before trial of the witness Cochran. This witness was produced and sworn in the trial, and his whole deposition previously taken was read, against the objection of defendant. He was the treasurer of defendant, and not a party de-

fendant, and the reading of his deposition after he had been sworn, with opportunity for cross-examination, was not permissible. Some material facts appear in this deposition which were not developed on his oral examination, and the ruling, therefore, was an error, necessitating a new trial of the action.

I dissent, however, from the conclusions reached by Mr. Justice LAUGHLIN in his opinion. It seems to me that plaintiff showed good title to the notes in controversy, and that defendant is bound by the acts of its treasurer and president in issuing them. The plaintiff paid full value before maturity, and had no notice of actual or intended diversion of proceeds, or of any infirmity in their execution, unless the form itself of the notes gave such notice. I do not think it did. The defendant was engaged in business, in the prosecution of which it gave notes for indebtedness incurred and for the purpose of obtaining cash, and it is not disputed that conjointly the president and treasurer could have given binding notes. Kohler was its president, with the power or "general management of the affairs of the corporation." Cochran was the treasurer. and the by-laws of the defendant, in addition to enumerating as his duties that he should have the care and custody of the funds and books of the corporation, provided that he should "sign all checks, drafts, notes, and orders for the payment of money which shall be countersigned by the president, and shall pay out and dispose of the same under the direction of the president." The treasurer signed the notes in question, and delivered them to the president to be negotiated for the benefit of the defendant. The president did not countersign them, but he procured them to be discounted by plaintiff in due course of business. Under the president's general authority to manage the affairs of the defendant, it can hardly be said he had no authority to give notes of the defendant in its business, or to negotiate one given therein by its treasurer.

The by-laws of defendant do not prescribe the form of any note to be given. In enumerating the duties of the treasurer, he is required to sign all notes, drafts, and checks which have been countersigned by the president, but he is not prohibited from giving any note by direction of the president before it should have been countersigned. In the regular performance of the duties which are enumerated by the by-laws, the first step would be the making of the note and the signing by the treasurer, and then it naturally would be countersigned by the president. A treasurer of a corporation is its fiscal officer, and, prima facie, checks, drafts, and notes issued in the business of the corporation, signed by him as such officer, are the obligations of the corporation, for they are acts which such an officer would ordinarily perform. The by-laws do not prohibit the giving of a note signed by the treasurer alone or by the president alone. They only prescribe that the treasurer shall sign if the president countersigns. Indeed, the defendant in course of business had issued and presumably ratified and paid several notes signed by the treasurer alone. This was sufficient evidence of course of dealing to authorize the direction of a verdict for plaintiff. If the president had power to give a note in his management of the defendant corporation, he had power to negotiate one given by the treasurer. This

he did. The fact that the draft of $5,000 was made payable to him individually, instead of as president of defendant, or as treasurer of the Trust Company if the notes were purchased from it, did not destroy the bona fides of the plaintiff. If currency had been given on the discounting of the notes, it necessarily would have been delivered to him as an individual, and as an individual he had authority to receive it. Nor does the fact that the president diverted the proceeds of the discount affect the plaintiff's position, for it was without notice or any means of knowing that the president would not act honestly towards his corporation.

Except for the error in reading the deposition, I should therefore vote for an affirmance of the judgment.

O'BRIEN, P. J. (dissenting). Upon the question of the defendant's liability upon the notes I concur with Mr. Justice HOUGHTON.

Upon the additional question, as to whether it was error to admit the deposition of the officer of the corporation, I dissent from the views of the majority of the court. It will be noticed by reference to the sections of the Code that a distinction is made between the examination of a mere witness and the examination of one who is a party to the action; it being permissible with respect to the latter to read the deposition, notwithstanding that the party is present at the time of the trial.

I think, under the construction to be given to these sections of the Code, that where, as here, what was sought and obtained was an examination of the defendant, which could only be obtained by examining its officers, when an examination is so taken it becomes the examination of the corporation, and is the equivalent of the examination of a party not a corporation, for the purpose of reading the same upon the trial of the action. I therefore dissent.