ELIZA S. CONSTANT *v.* THE RECTOR, WARDENS AND VESTRY
OF ST. ALBANS CHURCH.

The trustees of a religious corporation can alone bind the corporate body, and to execute this power, they must meet as a board, so that they may hear each other's views, deliberate and decide. The separate action of the trustees individually, without meeting and consulting together as a board, even though a majority in number should agree upon a certain act, is not binding upon the corporation, and cannot, of itself, create a corporate liability.

Plaintiff, at the request of certain of the trustees of an Episcopal church, carried on a fair for the benefit of the church, with the understanding that the expenses of the fair were to be paid for from the proceeds of the fair. Plaintiff paid the expenses of the fair, and the gross receipts were turned over to the building committee of the church, by whom they were used in the purchase of land and the erection of a church edifice. Plaintiff brought an action against the church for the money expended by her in the purchase of articles, &c., for the fair. *Held,* that the individual acts of the trustees could not bind the church, and that plaintiff could not recover.

*Quære,* as to whether a religious corporation can engage in a fair for the purpose of raising money to build a church.

It appeared that plaintiff had told one of the building committee, who was also one of the trustees, of her claim to be paid, from the proceeds of the fair, for the expense incurred by her, but that he had not informed the board of trustees of the claim. *Held,* that this was not notice to the trustees of her claim, and that the church took the fund relieved of any charge upon it to pay the plaintiff's claim.

APPEAL by defendants from a judgment entered on the verdict of a jury.

The complaint alleged that during the winter and spring of 1865, the defendants determined to hold a fair for the purpose of raising funds for the benefit of St. Albans Church, and to that end, they came to the plaintiff and requested her to take active management and superintendence of the preparations for and conduct of the fair. That she agreed to do so in April, 1865, and that the fair was held accordingly, at which she was manager and superintendent, and as such paid various bills necessarily incurred about the fair, on the understanding that the amounts so disbursed were to be repaid to her by the defendants from the receipts of the fair, or otherwise, and not intending them as gifts to the defendants. That she so paid $3,722 $\frac{29}{100}$.

Constant v. The Rector, Wardens and Vestry of St. Albans Church.

That at the close of the fair, the defendants appropriated the entire receipts of the fair, and did not and had not repaid the plaintiff. On the trial, it appeared that some time previous to the fair, the plaintiff had been requested to take charge of a fair to be held for the purpose of raising money to erect a church, by Messrs. Alburtis, Constant, Gorham, and Allen, the two former of whom were churchwardens, and the latter two, vestrymen of the defendant. In February, 1865, the plaintiff met, at the house of Mr. Alburtis, the rector of the church, Mr. Morrill, and Messrs. Alburtis, Allen, Constant, and Mr. Gorham (a vestryman), to talk over the subject of the fair, and at this meeting it was understood between them that the expense of the fair was to be paid from the proceeds.

The facts in regard to the way in which the fair was held, and what was done with the proceeds, are stated in the opinion. The plaintiff had a verdict.

*S. P. Nash*, for appellants.

*Henry Nicoll*, for respondent.

By the Court.*—Daly, Ch. J.—A new trial must be granted in this case for the refusal of the judge to instruct the jury as requested, that the acts of the members of the vestry at the time the plaintiff consented to take charge of the fair were not obligatory on the defendants. The refusal so to charge was equivalent to holding that they were, and the jury upon that presumption may have found a verdict for the plaintiff, upon the ground that she undertook to get up and manage the fair at the request of certain members of the vestry, with the understanding on her part and upon theirs, that the expenses incurred were to be paid out of the proceeds, and that as the *gross* receipts and not the *net* earnings of the enterprise were received by the defendants, they were received subject to the plaintiff's right to have the money she had expended returned to her by

* Present, Daly, Ch. J., Robinson and Larremore, JJ.

the defendants. It is sufficient that the jury may have given their verdict upon this ground, to show that the instruction requested was material, and as it was erroneous to refuse it, there will have to be a new trial.

The defendants are a religious corporation, the temporalities of which are, by statute, managed by a board of trustees, consisting of the rector, two churchwardens, and eight vestrymen (1 R. S. 212, 3 Edward's Stat. 687, § 1). The trustees of a religious corporation can alone bind the corporate body, and to execute this power they must meet as a board, so that they may hear each other's views, deliberate and decide. The separate action of the trustees individually, without meeting and consulting together as a board, even though a majority in number should agree upon a certain act, is not binding upon the corporation, and does not and cannot of itself create a corporate liability (*Cammeyer* v. *United German Lutheran Churches*, 2 Sandf. 229, 230; Tyler's American Ecclesiastical Law, p. 99; Angell & Ames on Corporations, § 504, p. 496, 8th ed.).

It is provided by statute that no meeting of the board of trustees can be held unless at least three days' notice of it is given in writing by the rector or one of the churchwardens (3 Edm. S. S. 687). The conference which the plaintiff had at the house of one of the churchwardens respecting the getting up of this fair, at which the rector of the church, the two churchwardens, and two of the vestry were present, was not a meeting of the board of trustees. Mr. Gorham, the treasurer of the board, testified that "it was not a vestry meeting of any kind —not even a business meeting." Alburtis, the churchwarden at whose house it took place, says that it was not a vestry or a formal meeting in any sense. There is nothing in the evidence, on the part of plaintiff, to show that it was; in addition to which the rector testified that the subject of the fair was "never brought before the vestry in any official shape." What was said therefore on that occasion, at Mr. Alburtis's house to the plaintiff by the persons who were present, was in no way binding upon the corporation, and could not create or impose any obligation upon it, unless those who were there acting and speaking individually were by some act of the corporate body

clothed with authority as agents or officers to contract on its behalf, and of this there was no evidence.

A religious corporation, like any other, is bound by the acts of its authorized agents in matters that are within its corporate capacity, and may, by the enactment of by-laws, or the distribution of the exercise of its powers among its various officers, or by conferring authority upon special agents, so charge itself as to become amenable for the acts of individuals representing it, and acting by its authority. It will, in certain cases, be presumed to have conferred authority where the act is done with its official knowledge, or is afterwards ratified by the corporation availing itself, with knowledge of all material facts, of what was done on its behalf, or otherwise directly approving and confirming it. This is familiar law in respect to which it is not necessary to cite authorities, but nothing of this nature is shown by the evidence in this case.

Assuming that the getting up and management of a fair for the purpose of raising money for the erection of a church building was not *ultra vires*, but within the capacity of a religious corporation—a point which it is not necessary to decide—there is nothing to show that the corporation ever authorized such an enterprise; nor that the board of trustees, by any action on their part, as a body, conferred upon any one or more of their number, or upon any one else, authority to engage in such an undertaking on behalf of the church, or that there was any ratification of what had been done, otherwise than by receiving from one of their number, with whom the proceeds of the fair had been deposited, the benefit of a sum of money obtained by the holding of it, a part of which went towards the erection of the church building and the residue, towards the purchase of the land upon which the edifice was built.

If the board of trustees had been officially advised, by notice or otherwise, before this money was laid out and expended in the erection of the church and the purchase of the land, that there was an understanding between the plaintiff and those who induced her to get up and superintend the fair, that any expense incurred by, or money laid out by her in furtherance of its object, was to be deducted from the proceeds,

and that the sum of money handed over as the proceeds of the fair, was subject to a deduction of this kind, they would have taken it *cum onere*, and the corporation would be bound to restore to the plaintiff the $3,400 which she expended in getting up and managing the fair. The acceptance of the money, with a knowledge of the manner in which it was obtained, and of the deduction to which it was subject, might, within the cases, be viewed either as an approval and ratification, on the part of the corporation, of the understanding entered into by certain members of the vestry with the plaintiff, before she engaged in the enterprize, or as money had and received by the corporation for the plaintiff's use (*Smith* v. *Tracy*, 36 N. Y. 83; *Murray* v. *Bininger*, 3 Keyes, 109; *Keeler* v. *Salisbury*, 33 N. Y. 653; *Christian University* v. *Jordan*, 29 Miss. 68; *Jack* v. *Burnett*, 12 Cl. & F. 812; Angell & Ames on Corporations, § 304; Grant on Corporations, pp. 559, 560).

In this case the receipts of the fair were every evening handed over by a lady who acted as treasurer, to one of the churchwardens, Mr. Constant, who was the plaintiff's son, and was by him deposited with a banking firm of which he was a member, and placed to the credit of Mrs. Alburtis, the treasurer of the fair. When the fair was closed, this lady drew checks upon him for such bills as came in, and after paying these checks, the balance was handed over to him as treasurer of the building committee. It was credited to him on the books of his firm as treasurer of the fund of the building committee, for, as would seem from the testimony of the treasurer of the corporation, all the money raised for the building fund went to the treasurer of this building committee.

The proceeds of the fair never came into the hands of the treasurer of the corporation, who testified that he never received any of it, but it was paid by the chairman of the building committee, Constant, partly in the purchase of the real estate, on which the church was built, the title to which was at first vested in him, and the residue was expended by him in payments on account of the construction of the church edifice.

The fair was held about the middle of April, 1865, for some four or five days, and before the month of July in that

year, the plaintiff sent the bills for the articles which she had bought for the fair, except a few for a small amount which she paid herself, to the banking house of which her son was a member, Alburtis & Constant, with her card, and the words written on it, "Pay for St. Albans Fair," which bills they paid and charged to her, she having funds of her own in their hands.

It appears, from her son's testimony, that after the close of the fair, the plaintiff stated that she had certain bills that were not paid, and that he informed her that the building committee had received the money obtained from the proceeds of the fair. He testified that she made this claim in the summer of 1866, more than a year after the holding of the fair, and (as I understand his testimony), that he either told her, or that such was the fact, that the money " had been handed over, by having been paid out," that "it had been most likely paid out on contracts for the building and on the purchase money of the lots;" the building, as appeared by other testimony, having been finished and opened on the 19th of November preceding. He says that this claim was advanced by her several times afterwards, but was never sent to the vestry to his knowledge, and was never communicated by him to the vestry.

The plaintiff, on her part, testified that she wanted to get all the bills together before she went to Alburtis & Constant. That she went to the firm in July after she sent in the bills, for the purpose of settling her affairs, and that they told her that the bills had been charged against her, and that she had no money there. That they told her that between $7,000 and $8,000 had been taken in at the fair, and upon her remarking that it was a strange thing that she should not be paid, that Mr. Alburtis replied, her son being present, that they had commenced digging the foundation of a church, had paid for a lot, and had no money, and she protested against such treatment.

There is a very material conflict between her testimony and that of her son, but assuming, as we must do in support of the verdict, that the jury believed the plaintiff in preference to her son, it does not vary the case, or establish any liability on the part of the corporation. It relates simply to what took place

between her and the firm of Alburtis & Constant. They, Alburtis & Constant, composed the building committee. They, or one of them, Constant, received the proceeds of the fair, and, either in consequence of the plaintiff delaying to send in the bills, for the expenditure she had made, until July, the fair having terminated about the 20th of April, or through her son's neglect or indifference to her interest, the whole of the proceeds which had come into his hands were applied by him in the purchase of the lots and towards the construction of the building, without any official knowledge on the part of the trustees that the plaintiff was entitled to have her expenses deducted from the sum which her son so applied. The allegation in the complaint is, that the plaintiff undertook the management of the fair at the request of the corporation, that she expended $3,722 29 of her own money, with the understanding that it was to be repaid to her by the corporation out of the receipts of the fair, that at the close of the fair the corporation appropriated the entire amount of the receipts, and did not repay the plaintiff the amount she had so expended. The defendants deny that they requested the plaintiff to take the management of the fair. They deny on information and belief any understanding on their part that the bills paid by her were to be repaid to her by them out of the proceeds, and they aver that the moneys received by them as the proceeds of the fair were appropriated to the uses of the church, no claim having been made by the plaintiff, or any other person, to any deduction therefrom, and this latter averment is established by the evidence. They aver that the moneys so received were received as a free gift, a donation, and not otherwise, and it would be neither equitable or just to charge this religious corporation, with the repayment of this large sum to the plaintiff, after they have applied it to the uses of the church, upon the presumption that it was a gift, there being nothing in the case to show that they had any official knowledge that the plaintiff had any claim upon it, her son having testified that her claim was never communicated by him to the vestry, that it was never sent to the vestry to his knowledge, and the rector testifying that the fair was never brought before the vestry in any official shape. The trustees

are entitled to the benefit of the assumption that if they had known that the plaintiff's claim was to be deducted from the moneys received as the proceeds of the fair by the chairman of the building committee, and would have to be repaid to her by the corporation if used for the building of the church, that they would, before allowing it to be so employed, have ascertained the amount to which the plaintiff was entitled, and used the residue only, as a gift or contribution made to the church. Having been used in the purchase of the land and in the building of the church, the corporation may now, for all that is known to the contrary, be wholly without means to pay it, and it would be unreasonable and unjust to charge them with a responsibility of which, as a corporation, they had no knowledge when this money was received and applied towards the erection of the church. Assuming even that the plaintiff's son, one of the trustees, knew that his mother was entitled to have the $3,722 29 deducted from the moneys which came into his hands from the fair, and that with full knowledge of that understanding, he applied it as a member of the building committee to the erection of the church, that would not amount to knowledge on the part of the board of trustees, before which the subject of the fair had never been brought officially, and who cannot be held answerable, upon the principle of ratification, for what was known only by one or, at the farthest, two of their number (*Smith* v. *Tracy*, 36 N. Y. 83; *Rowan* v. *Hyatt*, 45 Id. 141; *President, &c. of Westfield Bank* v. *Cornen*, 37 Id. 323; *Murray* v. *Bininger*, 3 Keyes, 109; *National Bank* v. *Norton*, 1 Hill, pp. 578, 579).

It is a very hard case for the plaintiff that she did not have the amount which she paid out for the fair repaid to her from the gross receipts. It may, as I have said, have arisen from a want of vigilance on her part after the closing of the fair, or it may have been through an intentional and wrongful act towards her on the part of her son. If he, with a knowledge of her claim, turned over the whole amount to the church as a free gift or contribution to the fair, he is the person who should answer to her, and not this religious corporation who received it, and for whose benefit it was expended in the erection of a

Constant v. The Rector, Wardens and Vestry of St. Albans Church.

church, without any knowledge on their part, as a corporate body, of any claim upon it, or to any part of it by the plaintiffs, or by anybody else. The judgment should be reversed, and a new trial granted.

ROBINSON, J.—I concur in the result to which Chief Justice Daly has arrived, but from these brief considerations: that the plaintiff, while acting as "lady president," or chief manager of the fair, referred to in the complaint, mainly organized and maintained through her efforts in its behalf, in no way raised even an *implied* legal obligation, to be repaid by the church, for any such moneys as she expended in her voluntary efforts in its behalf.

1st. The defendants possessed no power to carry on or conduct a *fair*, and could not delegate to any one authority for that purpose (1 R. S. 600, § 3).

2d. The "fair" and all proceedings connected therewith (so far as appears) were entirely *voluntary*, and intended as a mere *benefaction* in aid of the purposes of defendants' incorporation; and although more moneys may have come to their possible use or benefit than was intended in the inconsiderate action of the plaintiff as donor, no recovery in law can be had by her for any excess she may have paid, beyond what, in her immediate benevolent purposes, she may have intended, or for sums which she improvidently disbursed or became liable for in the management of the fair.

3d. The receipts of the fair, so far as appears, were received and appropriated by the firm of Alburtis & Constant (of which plaintiff was a member) to the purchase of the four lots on which defendants' church edifice was built, in the name of William J. Constant (plaintiff's son), which he subsequently sold and conveyed to Joseph Sands, and the purchase money on such sale was paid to that firm.

The law raised no trust for defendants' benefit in this transaction (1 R. S. 728, §§ 49, 51), nor imposed any obligation on them, by *implication*, for any acts done, or assumed to have been done, for their benefit, which were neither authorized or affirmed by their board of trustees.

4th. The evidence also established a settlement by the defendants and discharge of the claim in suit with the legal successors in interest of plaintiff's firm.

For these reasons the recovery was unauthorized and untenable.

Judgment reversed.