(70 Misc. Rep. 627.)

EHRET et al. v. GEORGE RINGLER & CO., et al.

(Supreme Court, Special Term, New York County. February, 1911.)

1. CONTEMPT (§ 21*)—DISOBEDIENCE OF ORDER OF COURT.
    There may be a contempt of court in disobeying an order neither filed nor entered.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 63–66; Dec. Dig. § 21.*]

2. INJUNCTION (§ 204*)—SUFFICIENCY OF ORDER.
    A final order of ouster in a proceeding to declare invalid the election of corporation directors on the ground that they have no beneficial interest in the shares standing in their names, which order contains an in-

junction against the directors from acting as such, though not entered or filed, was sufficient to restrain them, where they had knowledge of its contents and divested them of power to hold the corporate property.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 422, 423; Dec. Dig. § 204.*]

3. CORPORATIONS (§ 292*)—DIRECTORS—RIGHT TO RESIGN.

A director or officer in a private corporation cannot be compelled to serve as such against his will, but has the unqualified right to resign.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1255–1257; Dec. Dig. § 292.*]

4. CORPORATIONS (§ 553*)—RECEIVERS—STATUTORY PROVISIONS.

General Corporation Law (Consol. Laws 1909, c. 23), § 306, subd. 3, providing for appointment of a receiver to preserve the assets of a corporation where there is no officer empowered to hold such assets, contemplates such appointment, where there is no officer able to preserve such assets.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. § 553.*]

5. CORPORATIONS (§ 553*)—RECEIVERS—APPOINTMENT—GROUNDS.

Under General Corporation Law (Consol. Laws 1909, c. 23), § 306, subd. 3, the court will at the suit of a stockholder appoint a receiver of the corporate property where as a result of a final order of ouster in a proceeding to declare invalid the election of directors, which order embraced an injunction against the directors from acting as such, but two directors out of five remained, and by reason whereof they could not continue the corporation business, and the assets consisted largely of the good will of the business, for the preservation of which it was necessary that the business should be continued.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. § 553.*]

Action by George Ehret, Jr., and another, executors of William C. Ringler, against George Ringler & Co. and others for the appointment of a receiver. Receiver appointed.

Order reversed (129 N. Y. Supp. 551).

John M. Bowers and William H. Van Benschoten, for plaintiffs.

David Leventritt, for intervening defendants J. Edward Jetter and Anna Hachemeister, as administrators with the will annexed of Henry Hachemeister, deceased.

John B. Stanchfield, for intervening defendant Anna Hachemeister, individually.

GOFF, J. The plaintiffs, Ehret and Trommer, are executors of the estate of William C. Ringler, deceased, and in that capacity are owners of one-half, or approximately one-half, of the stock of defendant corporation. They have applied to the court under subdivision 3 of section 306 of the general corporation law for the appointment of a receiver to preserve the corporate assets, alleging that defendant company has "no officer empowered to hold the same." The defendant was incorporated in this state in 1899 for the purpose of conducting a brewery. It has an authorized and paid in capital stock of $600,000, in shares of $100 each, which was equally divided between William C. Ringler and Henry Hachemeister, except for certain shares transfer-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

red on the books to qualify three others as directors, the beneficial ownership of such qualifying shares being in Ringler, and except also five shares claimed to be owned by the widow of Henry Hachemeister, title to which is now in litigation. Hachemeister died July 5, 1907. Ringler died January 23, 1910. On October 30, 1909, there was an annual meeting of the stockholders, who went through the form of electing as directors Ringler, Anna Hachemeister, widow of Henry Hachemeister, Kugelman, an attorney at law, Trommer, who is one of these plaintiffs and who has been connected with the corporation from the beginning, and Strauss, a bookkeeper for the brewery. Ringler was qualified to act as director by reason of his ownership of half or nearly half the corporate stock. Anna Hachemeister appeared to have been qualified by. five shares standing in her name on the books of the company, now claimed by plaintiffs to be part of the Ringler estate. Kugelman, Trommer, and Strauss were apparently qualified by the fact that the stock books showed five shares standing in the name of each. On February 17, 1910, the five Hachemeister shares were transferred on the books of the estate of Ringler which claimed to own them, and at the same time the estate took possession of the certificate representing such shares, which certificate was found in the office of the brewery. On the assumption that this transfer was valid, Anna Hachemeister became disqualified to act as director. Plaintiffs thereupon issued five shares to Wilson, a bookkeeper in the brewery, and elected him a director. On December 28, 1910, the four directors, Wilson, Kugelman, Trommer, and Strauss, elected Ehret as successor to Ringler, and these plaintiffs placed five shares belonging to the estate in his name to qualify him to act. At the time of this action the officers were: Trommer, president; Ehret, vice president; Kugelman, secretary, and Strauss, treasurer; or, at any rate, they acted in such capacities until Trommer, Kugelman, and Strauss were judicially declared to be not qualified to act as directors under the following circumstances: Anna Hachemeister, being aggrieved at the act of these plaintiffs in transferring the five shares of stock standing in her name, brought an action to have the title adjudged to be in herself. That action is still pending. If it shall be determined in her favor, she and the Hachemeister estate together will have 3,005 shares and will control the company. On October 4, 1910, she began a proceeding in this court to declare the election. of directors invalid by reason of the fact that she was the only director elected who was qualified, the others having no beneficial interest in the shares standing in their names. This resulted in an opinion that her petition was well founded as to the fact of disqualification, and that there should be a final order of ouster against Trommer, Kugelman, and Strauss, who were in form elected at the stockholders' meeting in 1909, but that the form of procedure was not adapted to an order of ouster against directors Ehret and Wilson, because they were not elected at a stockholders' meeting, but by directors to fill vacancies. The opinion in that proceeding was filed November 24, 1910. On January 4, 1911, an order accordingly was signed and delivered to the clerk of Special Term, part I, and has been allowed to remain there without filing in the office of the county

clerk. An order having been granted in this action to show cause why a receiver should not be appointed to preserve the assets of the corporation on the ground that it has no officer empowered to hold them, the motion is now opposed by Jetter and Anna Hachemeister, as administrators of the Hachemeister estate, who deny the allegation that there is no such officer. They allege that if Trommer, Ehret, Kugelman, Strauss, and Wilson are not duly qualified directors and officers, at least they are such officers and directors de facto, and that as de facto officers they have power to hold the assets. To that plaintiffs reply that the de facto officers have been ousted by the order of January 4th. Their opponents contend that the order has no such effect because it has never been entered and filed. Conceding that the order has not been entered and filed, it does not follow that it had no effect whatever. It was not only an order of ouster, but it enjoined Kugelman, Strauss, and Trommer from acting as trustees, so that a violation of the order, the parties enjoined being cognizant of its existence (that is to say, that it had been signed and delivered to the clerk of the part), would have been a contempt of court, or at the very least it justified them in a refusal to do the acts which it directed them not to do.

[1] There may be a contempt of court in disobeying the terms of an order neither entered nor filed. Hull v. Thomas, 3 Edw. Ch. 236; Hearn v. Tennant, 14 Ves. Jr. 136, cited in People ex rel. Stearns v. Marr, 181 N. Y. 463, 470, 74 N. E. 431, 106 Am. St. Rep. 562.

[2] Those directors who were restrained by the order of January 4th were thereby divested of their powers, and cannot be held to be empowered to hold the corporate property. Neither they nor any of their fellow officers or directors ever acted as such de jure, but only de facto. That is not only admitted, but sufficiently appears from the papers presented. They had no beneficial interest in the stock of the defendant company at the time of their respective formal elections, and were therefore not qualified to act. It was so held in the opinion delivered in the ouster proceedings, which the court will follow on this motion not because those proceedings are res adjudicata, but because in the ouster proceedings the law was declared judicially and formally so as to become the law of the case. The only officers who can act for the corporation, assuming that they desire to act, or that the court should determine that they ought to act, are Ehret and Wilson, de facto directors, Ehret, de facto vice president, Kugelman, secretary, and Strauss, treasurer; the last two named being secretary and treasurer, respectively, de jure, because ownership of stock is not necessary to qualify them for these positions, and the corporation is bound by the act of the de facto directors in electing them. If the property of the corporation were inert, like a vacant lot or a bank account, it is possible that these might be sufficient to hold the property—that is to say, to keep it intact—but the property of this defendant is very largely of that kind known as "business" and good will. It must maintain relations with its customers continuously or its sales will fall off, its good will disappear, and by the falling off of its trade its plant will depreciate in value from an amount which it would cost to replace it to an amount at which it would sell if wholly or partly useless. To

hold the assets, the business must be actively continued, but it cannot be continued with only two directors. The statute provides that the affairs of a corporation shall be carried on by its board of directors (Gen. Corp. Law, § 34), and that there shall be at least three directors. Business Corp. Law, § 2. The by-laws provide that there must be five. There are not enough officers to "hold" the property, even though there be a secretary and treasurer; the latter being empowered to hold only the funds of the corporation, and the former not being authorized to hold anything at all. The assumption that there are any officers other than these rests on the theory that the old board and the officers elected by it cannot by resignation create such a condition that the court will be justified in appointing a receiver. That rule of law was enunciated in Zeltner v. Zeltner Brewing Co., 79 App. Div. 136, 80 N. Y. Supp. 338, affirmed 174 N. Y. 247, 66 N. E. 810, 95 Am. St. Rep. 574, under circumstances very different from those here presented. There an entire board of de jure directors resigned for the purpose of enabling the court to appoint a receiver. Here the maimed remnant of an illegal board desires to be relieved of duties which, it is true, they have assumed, but have assumed in ignorance of the illegality of their election. They are conscious of their own inefficiency after having been deprived of the services and advice of more than half their fellow directors. Even should the order of January 4th have no present effect, either as an ouster or as an injunction, such an order, poised above the official heads of three of the five directors, including one whom it would disqualify to act as president and one whom it would disqualify to act as vice president, would justify them in seeking relief from so intolerable a position. Their intention to discontinue the duties of the positions in which they have been acting may be inferred from their act in obtaining the order to show cause herein and from statements in the annexed affidavits.

[3] A director or an officer in a private corporation cannot be compelled to serve as such against his will, and he has an unqualified right to resign. Fearing v. Glenn, 73 Fed. 116, 19 C. C. A. 388. In this case the rule is accentuated by the fact that there is not in existence a legally qualified director of this corporation, that of the five persons who occupied the positions of directors three of them have been judicially declared to be illegal occupants, and the law applied to them applies in principle to the remaining two. Can it be maintained as a sound proposition of law that Trommer, who has been actually declared to be disqualified, and Ehret, who is practically disqualified, as directors, can be compelled to continue as president and vice-president, respectively? The mere statement of this proposition carries with it its own condemnation. When a statute says that a receiver of the assets of a corporation may be appointed where there is no officer empowered to hold the same, it must be taken to mean just exactly what it says.

[4] There is no room for construction where there is nothing to construe, and the word "empowered" is plainly expressive of its legal meaning. There is no officer of the corporation "empowered" to

"hold" the assets, and in this case to "hold" means to preserve the assets.

[5] At present the board of directors, as such, is impotent, for the reason that a corporation can only act by resolution of its board of directors, regularly constituted and acting together (Constant v. St. Alban's Church, 4 Daly, 305), and individual directors, or any number of them less than a quorum, have no authority to bind the corporation. Nat. Bank v. Norton, 1 Hill, 572. It might be argued with force that according to section 172 of the general corporation law this corporation might be dissolved on the ground that the stock is divided into two independent interests, for substantially that is the condition, and the resulting situation is chaotic. Were this condition to continue, there would be inevitable depreciation of value in the stock held by the two estates of Ringler and Hachemeister. Many efforts have been made and conferences held for the purpose of agreeing upon some working plan of· harmony and effectiveness, but it appears that the confusion is more pronounced and the differences more irreconcilable than ever. The only course left open is to appoint a temporary receiver, and, as intimated by the court on the argument, if the stockholders will in writing unite on the name of any person who holds stock, either individually or in a representative capacity, he will be appointed. Notice order for settlement at chambers.

Ordered accordingly.