PORINO V. MALERBA, Appellant, *v.* FRIARS MINOR OF THE ORDER OF ST. FRANCIS, IN THE STATE OF NEW YORK, Respondent.

First Department, December 14, 1917.

Religious corporations — action for breach of contract alleged to have been made with president — evidence as to president's authority.

Where in an action by an artist against a religious corporation to recover damages for the breach by defendant of a contract whereunder plaintiff was to paint and decorate the interior of the defendant's church, the plaintiff claims to have made the contract with the president of the defendant, who refused to allow him to perform, and it appears that said president was also treasurer of the defendant and the only other officer was the secretary; that the president personally conducted the business of the defendant and had authority to incur ordinary expenses, calling a meeting of the trustees only when he considered it necessary; that when he discussed the agreement with the plaintiff he did not disclaim authority to engage him to do the work, and that a contract for said work was subsequently made with another party who testified that he negotiated the same with the pastor of the church in conjunction with the president of the defendant, and that said president had made a contract for the construction of an adjoining building, authorization for which by the trustees did not.appear in the minute book produced in court, it was error for the trial court to refuse to allow the plaintiff to submit proof of the conversation had by him with the defendant's president, which he claims resulted in the making of the alleged contract, and to dismiss the complaint upon the ground that plaintiff had failed to show any authority in said president to make a binding contract.

The question whether the president of the defendant had in fact authority to bind it should have been submitted to the jury.

The authority of the president of the defendant and his powers were facts peculiarly within its knowledge, and, therefore, slight evidence on the part of the plaintiff of such authority was sufficient to call on the defendant to establish the absence of authority to make the contract.

LAUGHLIN and PAGE, JJ., dissented, with opinion.

APPEAL by the plaintiff, Porino V. Malerba, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 16th day of February, 1917, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Charles Trosk,* for the appellant.

*Louis A. Valente,* for the respondent.

SMITH, J.:

The plaintiff, an artist, sues the defendant, a religious corporation, to recover damages for the breach by defendant of a contract whereunder plaintiff was to paint and decorate the interior of the Church of St. Anthony, located at 154 Sullivan street, in the borough of Manhattan, New York city, and owned by the defendant corporation. Plaintiff claims to have made this contract with one Ferdinando Parri, the president of the defendant corporation, provided a miniature or model of the interior of the church as same would appear after the completion of the work, was submitted by plaintiff to, and found satisfactory and accepted by the defendant; that said model was prepared and furnished by plaintiff to, and accepted and approved by the defendant, but that nevertheless the defendant refused to allow plaintiff to perform his contract.

It appears from the testimony of Father Parri that at the date of the trial and also at the time of the making of the alleged contract he was the president and treasurer of the defendant corporation, and that the only other officer was the secretary, whose sole duty was to keep the minutes of meetings; that he (Father Parri) personally conducted the business of the defendant and had authority to incur ordinary expenses, calling a meeting of the trustees only when he considered any matter sufficiently important to have them pass upon it; that he was fully conversant with the extent of his authority, and never exceeded it; that when the plaintiff discussed with him the decorating of the church, he did not disclaim authority to engage him to do the work, nor did he refer him to any one else as having such authority; that all the correspondence between the parties on the subject was had with him, and that he called at the plaintiff's home in company with the pastor of the church for the purpose of examining the sketches that plaintiff was preparing. The pastor of the church testified that on the occasion of this visit Father Parri told the plaintiff to complete and present the sketches.

It further appears from the evidence that a contract for the

decoration of this church was subsequently made with another party, who testified that he negotiated the same with the pastor of the church in conjunction with Father Parri. The work under that contract was performed and paid for, and there is no claim that that contract was approved or ratified by the board of trustees. It also appears that Father Parri made a contract for the building of a day nursery adjoining the same church. He claims this was done upon the authorization of the board of trustees, but such authorization did not appear in the minute book produced in court and conceded to be the only minute book of the corporation, and no other proof was submitted of any such authorization. The board of trustees apparently met but once a year, and it does not appear that they transacted any detail business at all.

The trial court refused to allow plaintiff to submit proof of the conversation had by him with Father Parri which he claims resulted in the making of the alleged contract, and dismissed the complaint upon the ground that plaintiff had failed to show any authority in Father Parri to make a contract binding upon the defendant. We are of opinion that this was error, and that on the facts recited above, proof of the making of the contract should have been received, and the question whether the president of the defendant had in fact authority to bind the defendant, submitted to the jury. The plaintiff adduced evidence of some authority in Father Parri to contract on behalf of the defendant corporation. The building was owned by the defendant, of which Father Parri was president. The authority of Father Parri and his powers were facts peculiarly within the knowledge of the defendant, and, therefore, slight evidence only on the part of the plaintiff of such authority was necessary to call on the defendant to establish the absence of authority in its president to make the contract in question. (*Nutting* v. *Kings County Elevated R. Co.*, 21 App. Div. 72, 77.) What general or special powers were by the board of trustees of the corporation expressly conferred upon its duly elected president and executive, in the absence of positive evidence, can be determined only by inferences from facts proven, aided by the presumption that, as the chief executive officer of the corporation, he must have been clothed with some powers and

duties which, of necessity, pertained to those positions. (*Lee* v. *Pittsburgh Coal & Mining Co.*, 56 How. Pr. 373.)

The judgment appealed from should, therefore, be reversed, and a new trial ordered, with costs to appellant to abide the event.

SCOTT and DAVIS, JJ., concurred; LAUGHLIN and PAGE, JJ., dissented.

LAUGHLIN, J. (dissenting):

I am unable to concur in the rules of law stated by Mr. Justice SMITH as applicable to religious corporations, or in the reversal of the judgment.

The plaintiff is an artist. He brought this action to recover damages for the breach of a contract by which he claimed to have been employed to paint and decorate the interior of the Church of St. Anthony, located at No. 154 Sullivan street, in the borough of Manhattan, New York. The defendant was created a religious corporation by chapter 408 of the Laws of 1871 and was thereby authorized, among other things, to erect, establish and maintain churches and schools, and it was therein provided that its property and affairs should be managed and controlled by a board of eight trustees and such other officers as might be deemed necessary. It had a president and treasurer and the only other officer it had was a secretary. No by-law, rule or regulation was shown to have been adopted by the board of trustees delegating any of their authority. It was shown that the defendant built and owned the church known as the Church of St. Anthony and other churches; that it appointed rectors of the churches, including this church; but that it did not conduct the churches or have anything whatsoever to do with their business affairs. It does not appear whether or not the *church* was incorporated, but it was shown that it had two trustees who, however, had nothing to do with the administration of its affairs, and that such administration was solely in the hands of the rector. According to the uncontroverted evidence the funds for the maintenance of the church were raised by donations, pew rents, collections and church enterprises, but none were received from the defendant. It was shown that the *church* had a bank account in the Metropolitan Bank in which its

funds were deposited and that they were withdrawn on the pastor's checks, and that the expenses of repairs of the church building were borne by the church and not by the defendant. The plaintiff claims that the contract was made with him by the president of the defendant but he showed no resolution or action of the board of trustees either authorizing or ratifying it. It is well settled that one dealing with the officers or agents of a corporation is chargeable with notice of the extent of their power and authority (*Jemison* v. *C. S. Bank*, 122 N. Y. 135; *Alexander* v. *Cauldwell*, 83 id. 480), and while, with respect to trading corporations, their authority may be inferred from the nature of the duties performed, the rule is strictly adhered to with respect to religious corporations which are held bound only by the expressly authorized acts of their trustees or officers exercised in the manner prescribed by the charter. (*People's Bank* v. *St. Anthony's Roman Catholic Church*, 109 N. Y. 512; *Columbia Bank* v. *Gospel Tabernacle Church*, 127 id. 368; *Cammeyer* v. *United German Lutheran Churches, etc.*, 2 Sandf. Ch. 229; *Constant* v. *Rector, etc., of St. Alban's Church*, 4 Daly, 307; *Catholic F. M. Society* v. *Oussani*, 215 N. Y. 1; *Karsch* v. *Pottier & Stymus Mfg., etc., Co.*, 82 App. Div. 230; *Kelly* v. *St. Michael's R. C. Church*, 148 id. 767; *Westchester Mortgage Co.* v. *McIntire, Inc.*, 174 id. 446; *Ætna Explosives Co., Inc.*, v. *Bassick*, 176 id. 577.)

It appears that the defendant had a monastery on Thompson street in the vicinity of the church in which its president resided and that it was connected with the church by a passageway; that it conducted a college and supported the students; that it had an account in the Security Bank of New York in which its funds were deposited in the name, " Province of the Immaculate Conception; " that those funds were withdrawn on checks of the president without action of the trustees, but the authority conferred upon him with respect to the account was not otherwise shown, and that the president incurred ordinary, routine expenses without calling a meeting of the trustees, but otherwise the expenses incurred were first authorized by the trustees. All of the trustees of defendant were priests; and the president of defendant and the rector of the church were trustees. The plaintiff called the president as a witness who testified that the plaintiff called on him with

First Department, December, 1917.        [Vol. 180.

respect to decorating the church and stated that he would be glad to do the work and offered to make a model to show what he could do; that he informed the plaintiff that he knew the church required redecorating and that the rector had spoken to him about it; that he accompanied plaintiff, at the latter's request, into the church to enable him to see it; that he did not inform plaintiff that he had no authority to contract with him; that plaintiff subsequently sent for him to exhibit the sketch and he told the rector to go and see it and at the request of the rector they went together. He was not asked with respect to the interview. There is some general testimony with respect to correspondence between the plaintiff and the president of the defendant concerning this work. A letter written by defendant's president was introduced in evidence. It indicates that he was negotiating with the plaintiff with respect to the work but he therein stated that the decision did not depend upon him alone. The rector testified that when he and the president of the defendant called on plaintiff to see the sketch he told plaintiff to finish and present it; that the sketch was subsequently brought to the church and left in the rectory; that he subsequently saw it in the sacristy in the back of the church hanging on the wall, and that he gave no order for its removal. No further action was taken by any one with respect to the sketch or with respect to negotiations with the plaintiff, with the exception that, as hereinafter stated, plaintiff claims to have been prevented from doing the work. The plaintiff then took the stand and offered to testify with respect to the conversation between him and the president of the defendant at the first interview with a view to establishing a contract binding on the defendant. This was objected to and excluded. Plaintiff then offered to show that it was agreed between the plaintiff and the president of the defendant that plaintiff was to make sketches for painting and decorating the church; that if they were approved he was to be employed to do the work for $3,500; that pursuant thereto he made certain measurements in the church and took a number of pictures of the interior and commenced making the sketches; that they were examined and approved both by the president and by the rector and that it was agreed that on the president's return from Europe in

about six weeks plaintiff could start with the work; that he completed the sketches and took them to the church, as directed by the president, where they were hung for a period of six months and long after the return of the president from Europe; and that he demanded of the president that he be permitted to proceed with the work and the demand was refused. It appears that the work of painting and decorating the church was subsequently let, not by defendant's president, but by the rector, to one Rambusch, and the contract price therefor was wholly paid out of the *church* funds by checks drawn on its bank account. This, it is contended in the majority opinion, shows that the president of the defendant had authority to make the contract. I am of opinion that it corroborates the testimony to the effect that the duty of making repairs, including painting and decorating the church, did not devolve upon the defendant, but upon the church. It is also claimed that his authority is further shown by the fact that he had a day nursery built on land owned by defendant and that the book of minutes of the meetings of the board of trustees did not show a resolution authorizing it. He, however, testified, and it is uncontroverted, that there was action of the board authorizing it and that the resolution might be in the hands of the secretary.

As I view the case, therefore, there is neither evidence of express authority conferred upon defendant's president to make the contract for it, nor is there any evidence that it held him out as authorized to make such a contract or that it in any manner ratified it. The evidence with respect to a parol contract between plaintiff and defendant's president was, therefore, properly excluded.

I, therefore, vote for affirmance.

PAGE, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.