OPINION OF THE COURT
Rolando T. Acosta, J.
In this breach of contract action, plaintiff is suing defendant Sacred Heart, a religious corporation, and defendant Father Natoli for the cost of labor and services rendered at the church at the request of the church’s pastor, defendant Father Natoli. Defendants move for an order granting summary judgment in *852 their favor upon the ground that the church’s Board of Trustees neither authorized the work, nor empowered any individual trustee or corporate officer to authorize the work. The motion requires the court to consider the circumstances under which a religious corporation may be bound by the contractual acts of an individual trustee or pastor, and more particularly whether express or written authorization of the Board of Trustees is required to bind a religious corporation.
Contentions of the Parties
Defendants claim, inter alia, that the church’s Board of Trustees neither expressly authorized the work allegedly performed by plaintiff, nor expressly empowered any individual trustee or corporate officer to authorize the work. Thus, even if an oral contract existed between the individual defendant Father Natoli and plaintiff, defendants posit, defendant Sacred Heart is not bound by such a contract and may not be held liable for an alleged breach thereof. In support of this contention, defendants rely upon Religious Corporations Law § 5 and People’s Bank v St. Anthony’s R. C. Church (109 NY 512 [1888]).
Plaintiff does not dispute defendants’ contention that the Board of Trustees never expressly authorized the work which plaintiff performed. Instead, he contends that the work was constructively authorized by the prior practice and course of conduct of the defendant religious corporation. Specifically, plaintiff argues that it was the practice of the defendant Sacred Heart to delegate to the pastor of the church the power to authorize the type of work for which plaintiff is currently suing. Plaintiff claims that because he had been paid by defendant Sacred Heart for work previously performed by him at the sole request of the then-pastor (Father Joseph), his current work, likewise performed at the express request of the current pastor, Father Natoli, was similarly authorized, especially since Father Natoli was also the president of the Board of Trustees of the defendant church. Further, authorization for the work was evinced, according to plaintiff, by defendants’ knowing receipt, without protest, of the substantial benefits of plaintiff’s observable work and services upon the defendants’ premises/ building.
Discussion
Religious Corporations Law § 5, which sets forth the general duties and powers of the trustees of a religious corporation, *853 provides, in pertinent part, that: “The trustees of every religious corporation shall have the custody and control of all the temporalities and property, real and personal, belonging to the corporation and of the revenues therefrom, and shall administer the same in accordance with the discipline, rules and usages of the corporation * * * for the support and maintenance of the corporation * * * [T]hey may also, in their discretion, delegate and grant to the trustee or custodian designated by them all or any portion of the powers, responsibilities and discretionary authority possessed by them with respect to the retention * * * of such property or any part thereof’. The primary purpose of the Religious Corporations Law is “to provide for an orderly method for the administration of the property and temporalities dedicated to the use of religious groups and to preserve them from exploitation by those who might divert them from the true beneficiaries of the trust.” (Saint Nicholas Cathedral of Russian Orthodox Church v Kedroff, 302 NY 1, 29 [1950].)
Based at least in part upon the aforementioned language of Religious Corporations Law § 5, various courts have held that neither the trustees nor other officers of a religious corporation have separate individual authority to bind the corporation to a contract. Collective action by the Board of Trustees as a board is ordinarily necessary to authorize the making of a binding contract or to empower a particular individual to bind a religious corporation. (See, Krehel v Eastern Orthodox Catholic Church, 10 NY2d 831 [1961], affg 12 AD2d 465 [1st Dept 1960], affg 22 Misc 2d 522, 524 [Sup Ct, NY County 1959]; Matter of Congregation Anshe Kesser [Jewish Community Ctr.], 5 AD2d 1011, 1012 [2d Dept 1958].)
People’s Bank v St. Anthony’s R. C. Church (109 NY 512 [1888], supra), the case upon which defendants heavily rely, was the first to articulate and explain the foregoing legal principle. In People’s Bank (supra, at 519), three of the five members of the Board of Trustees — the president, the secretary and the treasurer — signed a promissory note which purported to obligate the church/religious corporation to make payments thereon. The Board of Trustees was not assembled when the three members signed the note and it was undisputed that the signing members acted separately in signing the note, signing it at different times and places. Further, there was no evidence that the defendant religious corporation “received the benefit of [any] consideration,” arising from the note. (People’s Bank v St. Anthony’s R. C. Church, supra, at 522.)
*854 The Court of Appeals held that under these circumstances the separate acts of the three trustees in signing the promissory note purportedly on behalf of the religious corporation was insufficient to bind the church or obligate it to pay the debt. Contrary to defendants’ contention here, however, the Court in People’s Bank {supra) did not hold that express authorization by the Board of Trustees of the religious corporation is always required to bind the church.
Indeed, the Court specifically stated in People’s Bank (supra) that authorization to bind a religious corporation may be “implied from the nature of the office” of the person who purports to enter into an agreement on behalf of a religious corporation, or “from previous similar dealings recognized by the corporation” (People’s Bank v St. Anthony’s R. C. Church, supra, at 525 [emphasis added]). Furthermore, it is well established that “no particular form of evidence is required to establish” authorization. (Kelly v St. Michael’s R. C. Church, 148 App Div 767, 771 [2d Dept 1912].)
Thus, relying upon People’s Bank (supra, at 525), courts have held that authorization may be shown by evidence of “a course of dealing by which the corporation held [certain officers] out as authorized to” bind the corporation (Miners & Merchants’ Bank v Ardsley Hall Co., 113 App Div 194,199 [1st Dept 1906]); by evidence that, inter alia, the “Father” of a religious organization, who was also the president and treasurer, acted as if he had authority to bind the church, never disclaimed such authority and “personally conducted the business of the defendant [religious corporation] and had authority to incur ordinary expenses,” binding the church to various other contracts (Malerba v Friars Minor, 180 App Div 441, 442 [1st Dept 1917]); by evidence that an agent-trustee of a religious corporation entered into an agreement for work, labor and services and that the religious corporation had knowledge of the work which was being performed, benefitted therefrom, and did not reject the bills for services rendered (Crest Chimney Cleaning Co. v Ahi Ezer Congregation, 62 Misc 2d 1040, 1048-1049 [Civ Ct, Queens County 1970]); or by evidence that the religious corporation “received the money represented by [a] note” signed only by officers of the religious corporation (Parucki v Polish Natl. Catholic Church, 114 Misc 6, 10 [Sup Ct, Erie County 1920]; see also, 92 NY Jur 2d, Religious Organizations, § 10, at 371-372 [“a religious organization may be liable, in proper circumstances, under principles of quasi-contract or unjust enrichment for work and labor performed under a purported contract *855 even though there has been no specific resolution, enactment or authorization of the board of trustees for such work * * * (t)he courts will imply a contract where the actions (of) the parties relate to such a contract and there is a benefit conferred on the religious corporation”]).
Because the facts which may establish the element of authority usually are peculiarly within the knowledge of the religious corporation, only “slight evidence” of authority need be presented by the plaintiff to shift the burden of proof to the religious corporation to establish the absence of authority to make the contract in question. (Malerba v Friars Minor, supra, at 443; see also, Karsch v Pottier & Stymus Mfg. & Improvement Co., 82 App Div 230, 233 [1st Dept 1903].) Furthermore, since the question of constructive or implied authority is so fact-sensitive, the issue is usually a matter to be resolved by the fact finder after a trial. (See, e.g., Bartlett v Mt. Zion Baptist Church, 280 App Div 798 [2d Dept 1952]; Bernstein v Friedlander, 58 Misc 2d 492 [Sup Ct, Kings County 1968].)
Here, there is no evidence that the Board of Trustees of the defendant religious corporation expressly authorized the alleged contract for plaintiff’s work. Contrary to defendants’ contention, however, the absence of proof of express authorization is not fatal to plaintiffs breach of contract claim. (People’s Bank v St. Anthony’s R. C. Church, 109 NY 512, 524-525, supra.) A religious corporation also may be liable on a contract between its officers/agents and third parties when it can be shown that the corporation constructively authorized the contract.
Thus, the dispositive issue in this case is whether plaintiff, in response to the motion for summary judgment, has set forth sufficient allegations to raise a material question of fact on the issue of constructive authority. Because the court finds that plaintiff has indeed set forth sufficient allegations to raise a material question of fact regarding his claim that the defendant Sacred Heart constructively authorized the work which he performed, the defendants’ motion for summary judgment is denied in all respects.
In response to defendants’ motion for summary judgment, plaintiff alleged that he “thought” Father Natoli had the authority to authorize the work which he performed because plaintiff was previously paid by defendant Sacred Heart for work previously performed by him at the sole request of the then-pastor, Father Joseph. Given that course of conduct, plaintiff believed that his current work, likewise performed at *856 the express request of the current pastor, Father Natoli, was similarly authorized, especially since Father Natoli was also a trustee of the Board of Trustees of the defendant church. Plaintiff further alleged that defendant Sacred Heart knowingly received, without protest, the substantial benefits of plaintiffs observable work and services upon the defendants’ premises/building. These allegations are sufficient, at the very least, to raise a material question of fact on the issue of constructive authority — which is all the plaintiff was required to do to successfully defeat the motion for summary judgment. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) Notwithstanding defendants’ contention to the contrary, plaintiff was not required to demonstrate that Sacred Heart’s Board of Trustees adopted a specific resolution authorizing the contract in order to expose defendant religious corporation to liability. Neither the pertinent statute, Religious Corporations Law § 5, nor the relevant case law (cited above), supports defendants’ contention.
Significantly, requiring plaintiff to prove express authorization by the Board of Trustees would work a substantial injustice in this case. It would be a complete travesty of justice to hold, as defendant religious corporation implicitly urges, that a religious corporation could receive and enjoy, by its pastor’s/agent’s procurement, the substantial benefits of a completed contract and then turn around and disclaim any liability or responsibility therefor on the remarkable ground that the Board of Trustees actually never explicitly authorized the work. This court cannot countenance such a result.
Religious Corporations Law § 5 was designed to protect religious groups from the “exploitation [of] those who might divert [church property] from the true beneficiaries of the trust.” (Saint Nicholas Cathedral of Russian Orthodox Church v Kedroff, 302 NY 1, 29, supra.) That special statutory protection was not designed to be used as a sword by those who wish to be unjustly enriched. (See, Crest Chimney Cleaning Co. v Ahi Ezer Congregation, 62 Misc 2d 1040, 1047, supra [to require proof of express authorization “would be to allow, by court sanction, any religious corporation the unfair advantage of an unjust corporate shield etched with religiosity, whereby the corporation could then unjustly enrich itself at the expense of unsuspecting and unwary merchants, purveyors, and service agencies”].) At the very least, religious organizations, given their ultimate mission, should not be held to a lower standard in equity.
*857 Accordingly, a trial of this action is necessary to resolve the factual issues in this case. Defendants’ motion for summary judgment is denied. To the extent that the individual defendant, Father Natoli, seeks summary judgment in his favor, that motion is also denied inasmuch as there exists material questions of fact on both the issue of whether a contract existed between plaintiff and defendant Natoli and the issue of whether defendant Natoli may be held individually liable for a breach thereof, assuming that a contract existed.